# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI - WESTERN DIVISION

| | | |
|---|---|---|
| STEVE WILDMAN AND JON BORCHERDING, INDIVIDUALLY AND AS REPRESENTATIVES OF A CLASS OF SIMILARLY SITUATED PERSONS, AND ON BEHALF OF THE AMERICAN CENTURY RETIREMENT PLAN, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | CASE NO. 16-CV-737 |
| v. | ) ) | |
| AMERICAN CENTURY SERVICES, LLC, THE AMERICAN CENTURY RETIREMENT PLAN RETIREMENT COMMITTEE, AMERICAN CENTURY INVESTMENT MANAGEMENT, INC., AMERICAN CENTURY COMPANIES, INC., CHRISTOPHER BOUFFARD, BRADLEY C. CLOVERDYKE, JOHN A. LEIS, TINA S. USSERY-FRANKLIN, MARGARET E. VAN WAGONER, GUDRUN S. NEUMANN, JULIE A. SMITH, MARGIE A. MORRISON, AND JOHN DOES 1-20, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

    I.     The American Century Retirement Plan ................................................. 2

    II.    Plaintiffs' Allegations ........................................................................... 5

ARGUMENT ........................................................................................................ 6

    I.     Plaintiffs' Claims Are Barred by ERISA's Statute of Limitations ........................ 6

    II.    Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted. ................... 8

          A.     Standards Governing Dismissal Under Rule 12(b)(6) and ERISA ............. 9

          B.     Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty. ................ 10

                1.     The Plan's Use of American Century Funds ................................ 10

                2.     Existence of Alternative Investment Options with Cheaper Fees ....................................................................... 13

                3.     Recordkeeping Costs ................................................................ 15

                4.     Purported Delay in Moving to Lower-Cost Share Classes ........... 16

                5.     Offering Money Market Funds and Not Stable Value Funds ....... 17

                6.     Allegedly Under-Performing Funds ............................................ 18

           C.     Plaintiffs Fail to State any Prohibited Transaction Claim ....................... 19

          D.     Plaintiffs Fail to State a Claim for Equitable Restitution ....................... 21

CONCLUSION .................................................................................................... 23

Case 4:16-cv-00737-DGK   Document 18   Filed 08/18/16   Page 2 of 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
  464 F.3d 338 (2d Cir. 2006)..................................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................9, 12

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
  763 F. Supp. 2d 423 (S.D.N.Y. 2011)........................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................9, 10

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ...........................................................................9, 10, 20

*Calhoon v. Trans World Airlines, Inc.*,
  400 F.3d 593 (8th Cir. 2005) ..............................................................................22

*Conkright v. Frommert*,
  559 U.S. 506 (2010).........................................................................................9

*Crocker v. RV Pharm. Co.*,
  782 F. Supp. 2d 760 (E.D. Mo. 2010).....................................................................10, 19

*Dupree v. The Prudential Ins. Co. of Am.*,
  No. 99-8837, 2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) ...................................................11

*Fifth Third Bancorp v. Dudenhoeffer*,
  134 S. Ct. 2459 (2014).......................................................................................9

*Forseth v. Bank of Am., N.A.*,
  No. 13-38, 2013 WL 2297036 (D. Minn. May 24, 2013).......................................................15

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002).....................................................................................21, 22

*Halderman v. City of Iberia*,
  No. 09-4049, 2009 WL 1912531 (W.D. Mo. July 1, 2009).......................................................9

*Harris Trust & Sav. Bank v. Salomon Smith Barney*,
  530 U.S. 238 (2000)........................................................................................22

ii

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ...............................................................13, 14, 17, 20

*In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*,
  661 F. Supp. 2d 861 (S.D. Ohio 2009) .................................................................13

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
  No. 11 Civ. 5127, 2012 WL 3191961 (S.D.N.Y. Aug. 7, 2012) ........................19

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
  129 F. Supp. 3d 4 (S.D.N.Y. 2015) .....................................................................19

*Leber v. Citigroup, Inc.*,
  No. 07 Civ. 9329(SHS), 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) .................20

*Leimkuehler v. Am. United Life Ins. Co.*,
  713 F.3d 905 (7th Cir. 2013) .........................................................................15, 17

*Markewich v. Collins*,
  622 F. Supp. 2d 802 (D. Minn. 2009) ....................................................................3

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
  811 F.3d 998 (8th Cir. 2016) ...............................................................................10

*Mehling v. N.Y. Life Ins. Co.*,
  163 F. Supp. 2d 502 (E.D. Pa. 2001) ...................................................................20

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*,
  136 S. Ct. 651 (2016)............................................................................................21

*Olsen v. FMG Benefit Servs., Inc.*,
  No. 4:08-cv-00475, 2008 WL 2132121 (E.D. Mo. May 20, 2008) .........................3

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013)..............................................................................9, 18

*Pichoff v. QHG of Springdale, Inc.*,
  556 F.3d 728 (8th Cir. 2009) ...............................................................................22

*Renfro v. Unisys Corp.*,
  671 F.3d 314 (3d Cir. 2011)..................................................................................14

*Reso ex rel. Artisan Int'l Fund v. Artisan Partners Ltd. P'ship*,
  No. 11-CV-873-JPS, 2011 WL 5826034 (E.D. Wis. Nov. 18, 2011)....................15

*Ruppert v. Principal Life Ins. Co.*,
  813 F. Supp. 2d 1089 (S.D. Iowa 2010) ..............................................................6, 8

Case 4:16-cv-00737-DGK   Document 18   Filed 08/18/16   Page 4 of 30

*Smithrud v. City of St. Paul*,
    746 F.3d 391 (8th Cir. 2014) ...................................................................9, 16

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013) ...........................................................14

*Tussey v. ABB Inc.*,
    746 F.3d 327 (8th Cir. 2014) ...........................................................13, 18

*Varner v. Peterson Farms*,
    371 F.3d 1011 (8th Cir. 2004) ...........................................................6

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008) .............................................6, 7, 8

**Statutes**

15 U.S.C. § 77e(b)(2) .....................................................................7

29 U.S.C. § 1023 (ERISA § 103) ..............................................................8

29 U.S.C. § 1104(a) (ERISA § 404(a)) ...............................................5, 10

29 U.S.C. § 1106(a) (ERISA § 406(a)) .............................................6

29 U.S.C. § 1106(b) (ERISA § 406(b)) .............................................6

29 U.S.C. § 1108(b)(5) (ERISA § 408(b)(5)) ....................................11

29 U.S.C. § 1108(b)(8) (ERISA § 408(b)(8)) .............................11, 20

29 U.S.C. § 1113(2) (ERISA § 413(2)) .............................................6

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) ..............................6, 21, 22

**Other Authorities**

17 C.F.R. § 210.6-07(2) (1995) ..............................................................7

17 C.F.R. § 270.30e-1 (2014) ..............................................................7

17 C.F.R. § 274.11A (1994) ..............................................................7

29 C.F.R. § 2520.103-1 (2013) ..............................................................8

29 C.F.R § 2550.404a-5 (2015) ..............................................................7

29 C.F.R § 2550.404a-5(d)(iv)(a)(4) (2015) .............................................13

iv

ACIM, What Sets Us Apart,
    https://corporate.americancentury.com/content/americancentury/corporate/en/
    about-us/what-sets-us-apart.html (last visited Aug. 16, 2016) ...................................................1

Best Interest Contract Exemption, 81 Fed. Reg. 21,002 (Apr. 8, 2016)........................................11

Compl., *Braden v. Wal-Mart Stores, Inc.*, No. 08-cv-03109 (W.D. Mo. Mar. 27,
    2008) .....................................................................................................................................20

Class Exemption Involving Mutual Fund In-House Plans, 42 Fed. Reg. 18,734,
    18,735 (Mar. 31, 1977) ...............................................................................................2, 11, 20, 21

Default Investment Alternatives Under Proposed Directed Individual Account
    Plans, 72 Fed. Reg. 60,452 (Oct. 24, 2007).  ..........................................................................17

DOL, *A Look at 401(k) Plan Fees* (2013), *available at* http://www.dol.gov/
    ebsa/publications/401k_employee.html......................................................................................13

DOL Advisory Op. 2013-03A, 2013 WL 3546834 ....................................................................16

Fed. R. Civ. P. 12(b)(6)....................................................................................................................9

H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N.
    5,038..........................................................................................................................................11

Notice of Proposed Rule-Making, Participant Directed Individual Account Plans,
    56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991) .............................................................................1

Stowers Institute for Medical Research, James E. Stowers, Jr.,
    http://www.stowers.org/James-E-Stowers (last visited Aug. 16, 2016) ....................................1

U.S. Government Accountability Office, 401(k) Plans: Certain Investment
    Options and Practices that May Restrict Withdrawals Not Widely Understood
    (Mar. 2011), www.gao.gov/new.items/d11291.pdf (last visited Aug. 16, 2016) ....................18

# INTRODUCTION

American Century Investment Management, Inc. ("ACIM," with affiliates, "American Century") is a leading financial services firm based in Kansas City, Missouri, founded in 1958.[1] More than 40% of its profits support research to cure genetically-based diseases such as cancer, diabetes and dementia,[2] and the company's late founder was once ranked by Forbes Magazine as one of the ten "most generous people on the planet" due to his charitable giving.[3] Plaintiffs, two former employees of the company, ask the Court to disregard this history, and assume that ACIM and the other defendants acted disloyally and imprudently through American Century's longstanding practice of offering their employees the same high-quality investments that they make available to American Century customers. Because Plaintiffs' entirely speculative theory has no basis in law, the Complaint should be dismissed at the outset for failure to state a claim.

There is nothing unusual or wrong about American Century using its own products for the generous retirement savings plan it makes available to its employees, the American Century Retirement Plan (the "Plan"). The principal regulator for employee benefit plans, the United States Department of Labor ("DOL"), has expressly authorized financial services companies like American Century to include their own mutual funds in their benefit plans, explaining that it would run "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor."[4] The Complaint pleads

---

[1] ACIM, What Sets Us Apart, https://corporate.americancentury.com/content/americancentury/corporate/en/about-us/what-sets-us-apart.html (last visited Aug. 16, 2016).

[2] *Id.*

[3] Stowers Institute for Medical Research, James E. Stowers, Jr., http://www.stowers.org/James-E-Stowers (last visited Aug. 16, 2016).

[4] Notice of Proposed Rule-Making, Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991) (discussing Prohibited Transaction Exemption 77-3); *see also*

1

no facts—as opposed to conjecture and conclusions—supporting any deficiencies in the process that led to American Century's use of this "normal" practice. Indeed, the Plan is **not** limited solely to ACIM funds. Rather, Plan participants (employees and former employees) can utilize the Plan's self-directed brokerage account and choose from a vast array of stocks, exchange-traded funds ("ETFs"), and mutual funds, including many low-fee funds and thousands of funds not advised by ACIM or any American Century entity.

Because the factual allegations do not give rise to any plausible inference of disloyal or imprudent conduct, the Complaint should be dismissed.

In addition, the Complaint suffers from numerous other fatal defects:

- The facts alleged in the Complaint, stripped of conclusions and rhetoric, demonstrate that ERISA's three-year statute of limitations bars Plaintiffs' claims because the facts Plaintiffs allege support their claims were known or apparent to Plaintiffs more than three years ago.

- Plaintiffs fail to plead any transaction prohibited by ERISA because it is clear from the face of the Complaint that ERISA exempts the transactions Plaintiffs challenge from its prohibited transaction provisions.

- Plaintiffs fail to state a claim for equitable restitution because Plaintiffs seek money damages and not a form of relief that is available in equity.[5]

## BACKGROUND

### I.    The American Century Retirement Plan

The Plan is among the generous benefits offered to eligible employees of American Century entities including ACIM, American Century Services, LLC ("ACS"), and American Century Companies, Inc. ("ACC"). Compl. ¶ 19. The Plan is designed to allow employees to

---

Class Exemption Involving Mutual Fund In-House Plans, 42 Fed. Reg. 18,734, 18,735 (Mar. 31, 1977).

[5] Contemporaneously with this motion, Defendants have also filed a motion for summary judgment on the separate ground that Plaintiffs' claims are barred by the releases and covenants not to sue that they executed.

2

accumulate assets on a tax-deferred basis as a way "to provide retirement income for Plan participants."[6] American Century has been making this benefit available to its employees since at least 1966, long before Congress added section 401(k) to the tax code in 1978. *See* Compl. ¶ 16.

Participating employees can elect to contribute anywhere from 1% to 80% of their salary to their Plan account.[7] American Century makes matching contributions of up to 4% of each eligible employee's total compensation.[8] American Century may also make additional discretionary profit sharing contributions in the form of ACC common stock or cash—the cash will be allocated to the employees' chosen investment options, as can the value of the stock contribution if and when participants elect to sell the stock allocated to their Plan account.[9] In 2014, American Century's discretionary contributions were equal to 9% of eligible employees' total compensation, or $13,087,733.[10] In total, American Century contributed approximately $90 million to the Plan in matching and discretionary contributions between 2010 and 2014—

---

[6] American Century Retirement Plan Summary Plan Description ("Summary Plan Description"), Appendix A, at ACI-0031, Declaration of David Rosenberg in Support of Defendants' Motion to Dismiss ("Rosenberg Decl.") Ex. 1, submitted herewith. Relevant Plan documents and public filings are provided for this Court's reference as exhibits to the Rosenberg Decl. Plaintiffs reference these documents, and courts in this circuit routinely consider them when resolving motions to dismiss. *See, e.g.*, Compl. ¶¶ 22, 25-33, 57, 71, 73, 88 (discussing the Plan's Forms 5500); Compl. ¶ 25 (discussing the Plan documents). *See Olsen v. FMG Benefit Servs., Inc.*, No. 4:08-cv-00475, 2008 WL 2132121, at *2-3 (E.D. Mo. May 20, 2008) (considering ERISA plan documents on a motion to dismiss); *Markewich v. Collins*, 622 F. Supp. 2d 802, 806 (D. Minn. 2009) (considering public filings).

[7] Compl. ¶ 20; 2014 Restatement of the American Century Retirement Plan ("Plan Document") § 4.2(a), ACI-0071, Rosenberg Decl. Ex. 2.

[8] Compl. ¶ 20; Plan Document § 4.1(b), ACI-0070, Rosenberg Decl. Ex. 2.

[9] Plan Document § 4.1(c), ACI-0070, Rosenberg Decl. Ex. 2; 2014 Form 5500 at ACI-0145, Rosenberg Decl. Ex. 3.

[10] 2014 Form 5500 at ACI-0145, Rosenberg Decl. Ex. 3. Prior to 2013, Plan employers additionally contributed 5% of eligible employee's total compensation as a non-discretionary fixed contribution. Plan Document § 4.1(e), ACI-0070, Rosenberg Decl. Ex. 2.

3

averaging more than $18 million per year.[11]

The Plan is participant-directed, meaning that each participant can allocate the amounts credited to her Plan account to any investment option, other than an ACC common stock fund, that has been made available. As publicly disclosed in the Plan's regulatory filing (on Form 5500), the Plan's core options as of the end of the last reported year, 2014, consisted of a broad array of twenty-five mutual funds, fifteen collective trusts, and the company stock fund.[12] The options include a wide range of asset categories, including domestic and international funds, equity and fixed income funds, and funds offering different levels of risk and potential reward.[13]

The Plan also makes available a self-directed brokerage window offered by an unaffiliated entity (the "Schwab Personal Choice Retirement Account") through which participants can invest up to 100% of their Plan account balance in a much larger universe of stocks, ETFs, and mutual funds, including low-fee index funds and thousands of funds not advised by ACIM or its affiliates.[14]

Not surprisingly, the Plan is very popular with employees. From 2010 through 2014, employees contributed over $54 million of their eligible compensation to the Plan.[15] Further, although participants who leave American Century are allowed to withdraw their Plan account balances and roll them over to another plan or individual retirement account on a tax-free basis,

---

[11] 2014 Form 5500 at ACI-0143, Rosenberg Decl. Ex. 3; 2013 Form 5500 at ACI-152A, Rosenberg Decl. Ex. 3; 2012 Form 5500 at ACI-0161, Rosenberg Decl. Ex. 5; 2011 Form 5500 at ACI-0168, Rosenberg Decl. Ex. 6; 2010 Form 5500 at ACI-0175, Rosenberg Decl. Ex. 7.

[12] 2014 Form 5500 at ACI-0147-49, Rosenberg Decl. Ex. 3.

[13] *Id.*

[14] *See* Summary Plan Description at ACI-0013, Rosenberg Decl. Ex. 2.

[15] 2014 Form 5500 at ACI-0143, Rosenberg Decl. Ex. 3; 2013 Form 5500 at ACI-152A, Rosenberg Decl. Ex. 3; 2012 Form 5500 at ACI-0161, Rosenberg Decl. Ex. 5; 2011 Form 5500 at ACI-0168, Rosenberg Decl. Ex. 6; 2010 Form 5500 at ACI-0175, Rosenberg Decl. Ex. 7.

over 700 retired or separated participants—over one-third of the total number of Plan participants (including Plaintiff Wildman)—had decided to leave their assets in the Plan as of December 31, 2014.[16]  As a result of the Plan's superb design, funding and operation, American Century's employees are doing far better than most in accumulating assets for retirement:  the average participant account balance in the Plan is almost *four times* the national average.[17]

## II.    Plaintiffs' Allegations

Plaintiffs, two former employees, have sued three American Century entities, ACS, ACIM, and ACC; the American Century Retirement Plan Retirement Committee (the "Committee"); and individual Committee members (collectively, "Defendants").  Plaintiffs assert class claims on behalf of "[a]ll participants and beneficiaries of the [Plan] at any time on or after June 30, 2010."  Compl. ¶¶ 14-15, 110.  Count I alleges that Defendants breached their fiduciary duties of prudence and loyalty under ERISA § 404(a), 29 U.S.C. § 1104(a), by failing to monitor the Plans' investment options and failing to remove investments that had become imprudent.  *Id.* ¶¶ 118-25.  Plaintiffs admit that they have no knowledge of the process by which the Plan's investment options were chosen and managed, *id.* ¶ 108, but they contend that a breach is "apparent from the Plan's menu of designated investment alternatives."  *Id.* ¶ 69.

Count II of the Complaint alleges that ACS failed to adequately monitor the Committee.  Compl. ¶¶ 126-33.  Counts III and IV allege that, by offering their employees the same funds that they offer their customers, funds that pay fees to ACIM, Defendants breached ERISA's technical prohibited transaction requirements.  *Id.* ¶¶ 134-46 (alleging violations of ERISA

---

[16] 2014 Form 5500 at ACI-0141, Rosenberg Decl. Ex. 3; *see also* Compl. ¶ 14.

[17] *Compare* 2012 Form 5500 at ACI-0159, 161, Rosenberg Decl. Ex. 5 (the Plan's average balance, determined by plan assets divided by number of participants, of approximately $236,446) *with* Plaintiffs' authority, the Investment Company Institute, A Close Look at 401(k) Plans at ACI-0184 (Dec. 2014) (cited in Compl. ¶¶ 21, 51, 61, 72) ("ICI Study"), Rosenberg Decl. Ex. 8 (national average plan account balance was $61,168 as of 2012).

§ 406(a), 29 U.S.C. § 1106(a) (Count III), and ERISA § 406(b), 29 U.S.C. § 1106(b) (Count

IV)). Count V seeks equitable restitution from the corporate Defendants under ERISA

§ 502(a)(3), 29 U.S.C. § 1132(a)(3). *Id.* ¶¶ 147-53.

**ARGUMENT**

Plaintiffs' claims fail because they are barred by the statute of limitations and because

each Count fails to state a claim.

## I.     Plaintiffs' Claims Are Barred by ERISA's Statute of Limitations

The Complaint should be dismissed because, on its face, it is barred by ERISA's three-

year statute of limitations. ERISA § 413(2) precludes claims that are filed more than "three

years after the earliest date on which the plaintiff had actual knowledge of the breach or

violation." 29 U.S.C. § 1113(2). In applying this provision, courts have "focused on whether

documents provided to plan participants sufficiently disclosed the alleged breach of fiduciary

duty, not whether the individual plaintiffs actually saw or read the documents." *Young v. Gen.*

*Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 n.3 (S.D.N.Y. 2008), *aff'd on other grounds*,

325 F. App'x 31 (2d Cir. 2009); *see also Ruppert v. Principal Life Ins. Co.*, 813 F. Supp. 2d

1089, 1102 (S.D. Iowa 2010) (disclosures in "ERISA-required reports, such as the Form 5500"

are sufficient to constitute actual knowledge).[18]

Indeed, courts have dismissed as time-barred ERISA claims similar to these that

challenge the selection of funds as investment options for a retirement plan where the use of the

challenged funds had been fully disclosed for more than three years prior to suit. *See, e.g.,*

*Young*, 550 F. Supp. 2d at 419. As *Young* explained, because it was "undisputed that Plaintiffs

---

[18] As the Eighth Circuit has held, affirmative defenses such as ERISA's statute of limitations
may be raised on a motion to dismiss if the facts establishing the defense are "clear from the face
of the complaint." *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004).

had actual knowledge that the Plans offered the [challenged] Funds as investment options" more than three years before they filed suit, and because information concerning "the fees and expenses associated with the . . . Funds" had indisputably been made available to participants, plaintiffs' claims were time-barred. *Id.* at 420.

Here, the public record and Plaintiffs' own allegations demonstrate that Plaintiffs had knowledge of the salient facts for more than three years before filing suit. Plaintiffs' theory of liability rests on an inference that they seek to have the Court draw about a flawed process, an inference that is based entirely on the obviousness and fully-disclosed nature of the Plan's investments: Plaintiffs allege that their claims are "apparent" from looking at the funds' characteristics. Compl. ¶ 69. But the challenged characteristics—use of American Century funds with different fee and performance attributes—have always been disclosed to Plan participants and the public at large.[19]

Not only have Plaintiffs pleaded that the alleged breach is "apparent" from the publicly available information about the Plan's characteristics, but they have also affirmatively demonstrated that there has been no material change in the challenged attributes for more than three years. Plaintiffs allege that American Century funds have been offered since 2010; that the total plan costs and recordkeeping costs have allegedly been excessive since then; that the money market funds allegedly underperformed stable value alternatives since 2010; and that the Vista Fund and American Century International Bond Fund have underperformed since at least 2010.

---

[19] The Plan's ERISA-required Form 5500 filings list the investment options offered. *See, e.g.*, 2012 Form 5500 at ACI-0163-65, Rosenberg Decl. Ex. 5. Information on fees and performance has also been provided to investors in compliance with federal securities law and ERISA. *See* 15 U.S.C. § 77e(b)(2); 17 C.F.R. §§ 210.6-07(2) (1995); 270.30e-1 (2014); 274.11A (1994); 29 C.F.R § 2550.404a-5 (2015) (requirement of quarterly fee disclosure). Plaintiffs also challenge the amount of recordkeeping fees, and concede that those are disclosed in the public Forms 5500. Compl. ¶¶ 88-90.

7

Compl. ¶¶ 67 n.4, 71, 72, 87, 98, 101-103, 105-7. Indeed, performance measures cited by Plaintiffs are taken directly from a 2010 publicly-filed fund prospectus. *Id.* ¶ 105.

Recognizing that their fact allegations plead their claims out of court, Plaintiffs include the entirely conclusory allegation that they did not have actual knowledge of their claims until "shortly before this action was filed" because they did not have knowledge of the "availability of less expensive investment alternatives" and their performance, "the costs of the Plan's investments [and overall costs] compared to those in similar plans," and the Plan's recordkeeping costs. Compl. ¶ 108. This purported justification fails to salvage their claims for two reasons. First, ERISA's statute of limitations is not tolled until a plaintiff has knowledge of "every last detail" of his claim. *Ruppert*, 813 F. Supp. 2d at 1102. In challenges to plan investments, like here, it is enough that Plaintiffs had knowledge of the Plan's investments and their fees. *See, e.g.*, *Young*, 550 F. Supp. 2d at 419. Second, the relevant public filings show that even the information Plaintiffs identify as being unknown to them was, in fact, available more than three years before filing the Complaint. Information on fund fees and performance was provided to investors, the information is available to all participants on the recordkeeper's website,[20] and similar data are publicly available for comparable funds and plans.[21]

Accordingly, Plaintiffs' claims are barred by the three-year statute of limitations.[22]

## II.  Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted

The Complaint should also be dismissed for failure to state a claim.

---

[20] *See* Summary Plan Description at ACI-0031, Rosenberg Decl. Ex. 2.

[21] *See supra* n.19. Other ERISA-governed plans would have filed publicly-available Forms 5500, as the Plan did. *See* ERISA § 103, 29 U.S.C. § 1023; 29 C.F.R. § 2520.103-1 (2013).

[22] Certain of Plaintiffs' claims also may fail ERISA's separate six-year statute of repose. Defendants expressly do not waive this argument, and reserve their right to assert this and other defenses should this motion and the parallel motion of summary judgment as to Plaintiffs' waiver of their right to sue be denied.

## A.     Standards Governing Dismissal Under Rule 12(b)(6) and ERISA

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff must provide "direct or inferential allegations respecting all the material elements" of her claims. *Id.* at 562. "Conclusory statements . . . do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (courts reject "mere conclusory statements"). Nor do allegations contradicted by documents properly subject to judicial notice or referenced in the complaint. *See Halderman v. City of Iberia*, No. 09-4049, 2009 WL 1912531, at *3 (W.D. Mo. July 1, 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Factual allegations that are merely "consistent with" unlawful conduct do not state a claim where "more likely explanations" or "obvious alternative explanations" of lawful conduct exist. *Id.* at 682.

These principles apply equally to ERISA claims. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). In enacting ERISA, "Congress sought to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (internal quotations and citation omitted). Because "ERISA imposes extensive disclosure requirements on plan administrators . . . plan beneficiaries (*i.e.*, prospective plaintiffs) [have] the opportunity to" discover claims. *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719-20 (2d Cir. 2013). Accordingly, the Supreme Court instructs that the Rule 12(b)(6) stage is an "important mechanism for weeding out meritless [ERISA] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).

9

Consistent with these principles, courts routinely dismiss inadequately pled ERISA claims. Earlier this year, the Eighth Circuit affirmed dismissal of claims that an ERISA service provider charged excessive fees, relying on *Twombly* and *Iqbal*. *McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1002, 1005 (8th Cir. 2016). In *Crocker v. RV Pharmaceutical Co.*, 782 F. Supp. 2d 760, 785-86 (E.D. Mo. 2010), the court dismissed a breach of loyalty claim where plaintiffs' circumstantial allegations of a conflict of interest failed to give rise to a plausible inference of an improper motivation for selecting an investment option.

These cases counsel in favor of dismissal here.

**B.      Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty**

The Complaint's initial count, for breach of ERISA's fiduciary duties, fails to state a claim because it does not adequately allege a deficiency in the process for selecting investments.

A claim for breach of fiduciary duty under ERISA § 404(a) focuses on "the fiduciary's conduct preceding the challenged decision" and not the "results of those decisions." *Braden*, 588 F.3d at 595. As a result, a plaintiff must either plead factual allegations directly referring to a fiduciary's investment decision-making process, or it must plead sufficient nonconclusory facts to establish a "plausible inference" of misconduct. *Id.* at 594, 598. Here, Plaintiffs concede that they do not allege any facts about the Defendants' process. Compl. ¶ 108. Instead, they ask the Court to infer an imprudent process based on six circumstantial allegations. But none of these circumstantial facts, either individually or in the aggregate, "nudge[] their claims across the line from conceivable to plausible" as required by *Twombly*, 550 U.S. at 570.

**1.      The Plan's Use of American Century Funds**

Although Plaintiffs decry the Plan's use of American Century funds, the selection and retention of these funds does not give rise to a plausible inference of an imprudent process.

As Congress recognized, it is "common practice" for financial services companies to invest their own plans' assets in their own investment funds.[23] Consequently, ERISA includes two statutory exemptions from its prohibited transaction rules for the use of proprietary investment products in plans sponsored by banks and insurance companies. *See* ERISA § 408(b)(5), (8), 29 U.S.C. § 1108(b)(5), (8). In 1977, the DOL extended this relief to plans sponsored by mutual fund advisers and their affiliates to enable such plans to invest in their affiliated mutual funds pursuant to Prohibited Transaction Exemption ("PTE") 77-3.[24] In so doing, the DOL recognized that allowing mutual fund companies to make proprietary funds available under their employee benefit plans is "in the interests of plans and of their participants and beneficiaries" and "protective of the rights of participants and beneficiaries."[25] Just this year, the DOL issued an additional exemption that will expressly allow financial institutions and their advisers, who will otherwise become fiduciaries under 29 C.F.R. § 2510.3-21(a) (applicable April 10, 2017), to "limit the products that [they] offer to" proprietary investments.[26]

Given the numerous exemptions allowing financial institutions to use and promote their own products in a fiduciary capacity, one court explained that no wrongdoing can be inferred where plans sponsored by financial services companies include proprietary funds: Conformity with a commonplace "practice—the very result Congress [and the DOL] intended to approve by enacting the[se] exemptions—does not give rise to an inference of disloyalty." *Dupree v. The Prudential Ins. Co. of Am.*, No. 99-8837, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 7, 2007) (entering defense judgment). As another court observed in dismissing a challenge to a plan's

---

[23] H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N. 5,038, 5,096.

[24] *See* 42 Fed. Reg. at 18,734-35.

[25] *Id.* at 18,734.

[26] Best Interest Contract Exemption, 81 Fed. Reg. 21,002, 21,053 (Apr. 8, 2016).

investments, no inference of imprudent conduct under ERISA § 404(a) can be inferred from compliance with other statutory provisions—even provisions that are distinct from § 404(a)—because doing so would make those other provisions "contradictory." *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 580 (S.D.N.Y. 2011) (dismissing claims, holding that corporate officers can serve in fiduciary capacities notwithstanding allegations of conflict).

Any potential inference of wrongdoing is further negated here by the fact that the Plan also made available a Schwab Personal Choice Retirement Account through which participants can invest up to 100% of their Plan accounts in a large universe of stocks, ETFs, and mutual funds, including mutual funds and investments not managed by ACIM, which would result in no fees to ACIM. Plaintiffs' claims are additionally implausible in light of the generous contributions that American Century makes to the Plan—approximately $18 million on average *per year* between 2010 and 2014, amounting to almost *one hundred million dollars* during the putative class period—an amount that vastly exceeds the alleged "excess fees" that Plaintiffs claim ACIM received through the inclusion of its funds in the Plan's line-up. *See* Compl. ¶¶ 71-72. If the Defendants were motivated to increase American Century's profits, American Century would have eliminated the brokerage window, or reduced and/or eliminated the level of its discretionary contributions.

Given these facts, the inference of self-interest that Plaintiffs seek to have the Court draw fails. The Court need not credit theories that defy "common sense." *Iqbal*, 556 U.S. at 679. "As between th[e] 'obvious alternative explanation'" for the selection of certain American Century funds—that Plan fiduciaries deemed it to be in the best interests of Plan participants to offer them the same funds as American Century offers to its investors—and the disloyalty and

intentional self-dealing that Plaintiffs ask the Court to infer, a deficient investment process "is not a plausible conclusion." *Id.* at 682.

### 2. Existence of Alternative Investment Options with Cheaper Fees

The Complaint's allegation that cheaper investments were available is also unavailing.

The Eighth Circuit held that, in selecting investments for a plan, fiduciaries are entitled to substantial deference. *Tussey v. ABB Inc.*, 746 F.3d 327, 335 (8th Cir. 2014) (reversing trial judgment for failure to afford discretion to fiduciary decision-making). And the DOL has further cautioned that fees should not be considered "in a vacuum" because "[t]hey are only one part of the bigger picture including *investment risks and returns and the extent and quality of services provided*."[27] Indeed, the Department of Labor requires plan sponsors to inform their plan participants that "fees and expenses are only one of several factors that participants and beneficiaries should consider when making investment decisions."[28]

Given the latitude afforded to fiduciaries, and the fact that fees cannot be measured in a vacuum, reasonableness under ERISA is to be measured by a range—no one fee amount is alone "reasonable," and simply allowing a plan to incur greater expenses than some hypothetical average does not amount to impropriety: "The fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).[29]

---

[27] DOL, *A Look at 401(k) Plan Fees* at ACI-00192A (2013) (emphasis added), *available at* http://www.dol.gov/ ebsa/publications/401k_employee.html, Rosenberg Decl. Ex. 9.

[28] 29 C.F.R. § 2550.404a-5(d)(iv)(a)(4) (2015).

[29] *See also In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*, 661 F. Supp. 2d 861, 867 (S.D. Ohio 2009) (dismissing excessive fee claim where plaintiffs alleged that cheaper options were available because "nothing in ERISA requires the . . . Defendants as to search the market to find and offer the cheapest possible fund").

13

Accordingly, courts have held that plans offering funds with a range of expenses do not raise an inference of a deficient process. *Hecker*, 556 F.3d at 586. (range of fees for individual investments between 0.07% and 1.00% did not raise an inference of a deficient process); *Renfro v. Unisys Corp.*, 671 F.3d 314, 319 (3d Cir. 2011) (affirming dismissal where expense ratios ranged up to 1.21%); *see also Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013) (granting summary judgment where expense ratios ranged up to 2.00%), *rev'd on other grounds*, 135 S. Ct. 1823 (2015). The Seventh Circuit specifically noted that the availability of a self-directed brokerage window makes "[a]ny allegation that these options did not provide the participants with a reasonable opportunity to . . . control the risk of loss from fees . . . implausible." *Hecker*, 556 F.3d at 590 (citing *Twombly*).

Here, Plaintiffs' claims fail under these cases. They allege that the aggregate Plan cost was higher than that of other plans by 0.20% and 0.21% in 2009-10 and 2013, without alleging how the performance or services of those other plans compared. Compl. ¶ 72 (alleging Plan fees of 0.73% Plan compared to 0.53% for comparators in 2009-10, and 0.65% compared to 0.44% in 2013). They also allege that the mutual funds offered under the Plan had fees that range from 0.27% to 1.46%. *Id.* ¶ 73. By themselves, these expenses are well within the range other courts have held raise no inference of a deficient process. *See Renfro*, 671 F.3d at 319; *Tibble*, 729 F.3d at 1135. And Plaintiffs do ***not*** even address the fees of the collective trusts, company stock option, and brokerage window under the Plan, making their comparisons of even less value. For example, Plaintiffs do not allege that the American Century stock fund had ***any fees***.

Finally, many of the funds identified by Plaintiffs as allegedly "comparable . . . funds" are passively managed index funds affiliated with an American Century competitor, the Vanguard Group, which are managed simply to own a representative sample of the market.

14

Compl. ¶ 73. Courts have specifically rejected analogous claims of fiduciary breach with respect to actively managed funds with higher expenses than Vanguard index funds. *See Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 345-46 (2d Cir. 2006) (upholding dismissal of Investment Company Act claims based on allegation that Vanguard offered a comparable fund with cheaper fees); *see also Reso ex rel. Artisan Int'l Fund v. Artisan Partners Ltd. P'ship*, No. 11-CV-873-JPS, 2011 WL 5826034, at *8 (E.D. Wis. Nov. 18, 2011) (comparisons to Vanguard "of little value").

### 3. Recordkeeping Costs

Plaintiffs next allege that the Plan's "high costs are also due in part to the excessive recordkeeping fees Defendants have caused it to pay." Compl. ¶¶ 82-90. These conclusory allegations also fail to support an inference of an imprudent or disloyal process.

*First*, Plaintiffs' allegations do not even allege the amounts of the fees charged by Schwab Retirement Services, Inc. ("Schwab"), the Plan's unaffiliated recordkeeper. Plaintiffs concede that their allegations regarding the portion of the Plan's total costs that are paid to Schwab[30] are based on Plaintiffs' ***assumptions*** about how much they think Schwab ***might have been paid***. Compl. ¶ 90. Plaintiffs' assumptions are insufficient to state a claim. *Forseth v. Bank of Am., N.A.*, No. 13-38, 2013 WL 2297036, at *4 (D. Minn. May 24, 2013) (assumptions are insufficient to meet a plaintiff's pleading burden).[31]

---

[30] The Seventh Circuit has described the "commonplace" method of compensating recordkeepers through "revenue sharing" of a portion of a fund's investment fees, in consideration of the recordkeeper performing "participant-level services that the [] fund would [otherwise] be furnishing." *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 908-09 (7th Cir. 2013).

[31] Since Mr. Borcherding ceased participating in the Plan in 2012, the Schwab fees are irrelevant as to him in any event, given that Schwab began providing recordkeeping in 2013. Compl. ¶¶ 15, 90.

15

**Second**, Plaintiffs fail to adequately plead how much a recordkeeper should have been paid. Plaintiffs allege that "[b]ased on information currently available to Plaintiffs regarding the Plan's investments, the nature of the administrative services provided, and the Plan's participant level . . . , and the recordkeeping market, the outside limit of a reasonable recordkeeping fee for the Plan would have been between $50 and $60 per participant." Compl. ¶ 87. But Plaintiffs provide no support for this statement, and no citation to or description of the information they purport to have based it upon. The Court need not credit such conclusory statements, nor Plaintiffs' similarly conclusory allegation that recordkeeping fees charged by Schwab's predecessor were excessive merely because they exceeded this assumed reasonable fee. *See Smithrud*, 746 F.3d at 397 (court should reject allegations supported by "mere conclusory statements").

### 4. Purported Delay in Moving to Lower-Cost Share Classes

Plaintiffs also point to Defendants' alleged delay in transferring certain Plan investments into newly-available, lower cost share classes. Compl. ¶¶ 77-81. This, too, fails.

A decision to not move to a lower-cost share class—let alone to not do so immediately when the Plan was otherwise switching recordkeepers (*see* Compl. ¶¶ 78, 90)—does not suggest a breach of any duty to monitor investments. Although "some share classes are more expensive than others, [] the cheapest option may not inevitably be the best option," particularly given the use of revenue sharing to pay other plan costs, such as recordkeeping costs. *Leimkuehler*, 713 F.3d at 912 (rejecting claim of imprudence based on failure to offer a lower-cost share class). For this reason, the DOL has advised fiduciaries to consider the impact of share-class selection on a plan's **total costs compared to the total services**, without viewing the investment cost of a single fund in isolation. *See* DOL Advisory Op. 2013-03A, 2013 WL 3546834, at *3 ("[R]esponsible plan fiduciaries must assure that the compensation the plan pays . . . for services

16

is reasonable, taking into account the services provided to the plan *as well as all fees or compensation received by [the service provider] in connection with the investment of plan assets, including any revenue sharing*." (emphasis added)).

### 5. Offering Money Market Funds and Not Stable Value Funds

Plaintiffs also allege that the Court should infer a fiduciary breach because Defendants offered two money market funds as investment options rather than a stable value fund. Compl. ¶¶ 92-100. However, "nothing [in ERISA] requires plan fiduciaries to include any particular mix of investment vehicles in their plan." *Hecker*, 556 F.3d at 586. Because money market funds have certain advantages as compared to stable value funds, these allegations do not permit any inference of an imprudent process.

First, while stable value funds have outperformed the Plan's money market funds since 2010, there is no guarantee that this will always be so.[32] Second, the somewhat higher performance generally achieved by stable value funds is accompanied by the assumption of greater risk. The DOL has identified that there are "important differences between money market and stable value funds beyond any difference in average returns."[33] For example, "stable value products may expose investors to the credit risk of the fund vendor in ways that money

---

[32] Indeed, in 2007 the Capital Preservation Fund had a return of 4.38% and the Premium Money Market Fund returned 5.04%. Aug. 1, 2008 Capital Preservation Fund Prospectus at ACI-0200, Rosenberg Decl. Ex. 11; Aug. 1, 2008 Premium Money Market Fund Prospectus at ACI-0206, Rosenberg Decl. Ex. 12. The Premium Money Market Fund is now known as the U.S. Government Money Market Fund, but Defendants refer to it herein as the Premium Money Market Fund for ease of reference. *See* Mar. 31, 2016 U.S. Government Money Market Fund Annual Report at ACI-0212, Rosenberg Decl. Ex. 13.

[33] Default Investment Alternatives Under Proposed Directed Individual Account Plans, 72 Fed. Reg. 60,452, 60,473 n.35 (Oct. 24, 2007).

market funds do not." *Id.*  Stable value fund managers may also impose transfer restrictions.[34]  Indeed, far from stating that offering money market funds is a *per se* violation of ERISA's fiduciary duties, the DOL explains that money market funds "can, and in many instances will, play an important role as a component of a diversified portfolio."[35]  Accordingly, Plaintiffs' challenge to the money market funds does not raise any inference of an imprudent process.

### 6. Allegedly Under-Performing Funds

Finally, Plaintiffs seek an inference of an imprudent process from Defendants' selection and retention of two "poorly performing" actively-managed proprietary funds.  Compl. ¶¶ 7, 101-07.  The Eighth Circuit has rejected such arguments, which are based on "hindsight" and focus on the "investment options' subsequent performance" and not on the process employed by the Plan fiduciaries.  *See, e.g.*, *Tussey*, 746 F.3d at 338 (vacating judgment).  In affirming dismissal of such claims, the Second Circuit explained that it is not enough to allege "that better investment opportunities were available"; a plaintiff cannot "rely on the vantage point of hindsight."  *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (citation omitted).

Not only do allegations of allegedly poor performance fail to state a claim generally, but the allegations here are uniquely deficient.  In a plan with approximately sixty core investment options offered since 2010,[36] Plaintiffs' allegations of poor performance focus solely on the

---

[34] U.S. Government Accountability Office, 401(k) Plans: Certain Investment Options and Practices that May Restrict Withdrawals Not Widely Understood at 25-26 (Mar. 2011), www.gao.gov/new.items/d11291.pdf (last visited Aug. 16, 2016).

[35] 72 Fed. Reg. at 60,463.

[36] *See also* 2014 Form 5500 at ACI-0147-49, Rosenberg Decl. Ex. 3; 2013 Form 5500 at ACI-0154-56, Rosenberg Decl. Ex. 4; 2012 Form 5500 at ACI-0163-65, Rosenberg Decl. Ex. 5; 2011 Form 5500 at ACI-0170-72, Rosenberg Decl. Ex. 6; 2010 Form 5500 at ACI-0177-79, Rosenberg Decl. Ex. 7.

investment performance of only two specific funds.  Compl. ¶¶ 101-07.[37]

Plaintiffs allege that the International Bond Fund and Vista Fund each underperformed its benchmark, by approximately 2.3% and 0.75% respectively, over a ten-year period, even though each fund had positive performance (*i.e.*, increased shareholder value) over those same periods. Compl. ¶¶ 101, 106.  Allegations of a modest failure to achieve a performance benchmark— particularly as to two of sixty funds—do not permit a reasonable inference of an imprudent investment process.  *See Leber v. Citigroup 401(k) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 14 (S.D.N.Y. 2015) ("Plaintiffs' allegations of the Funds' alleged underperformance in average annual returns as compared to certain benchmark indices . . . do not raise a plausible inference that a prudent fiduciary would have found those Funds to be 'so plainly risky' as to render the investments in them imprudent." (citation omitted)).[38]

* * *

Given that Plaintiffs have alleged no facts about the fiduciary process that raise an inference of a breach of duty, Counts I and II should be dismissed.[39]

### C.  Plaintiffs Fail to State any Prohibited Transaction Claim

Counts III and IV, asserting prohibited transaction claims, should also be dismissed.

As noted above, ERISA expressly exempts from its prohibited transaction rules the very conduct that Plaintiffs' challenge—investments in proprietary funds.  *See, e.g.*, ERISA

---

[37] Any investor would be extremely fortunate to have 58 out of 60 investments, over 96%, perform well.

[38] *See also Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, No. 11 Civ. 5127, 2012 WL 3191961, at *2 (S.D.N.Y. Aug. 7, 2012) (dismissing similar complaint that alleged only modest underperformance), *aff'd*, 513 F. App'x 78 (2d Cir. 2013).

[39] Plaintiffs' failure-to-monitor claim (Count II) is wholly derivative of Count I and therefore fails because Count I fails.  *See Crocker*, 782 F. Supp. 2d at 788 (dismissing claim alleging a failure to monitor fiduciaries for failure to plead an underlying breach of duty).

§ 408(b)(8) (bank and insurance company pooled funds); *supra* p. 11. PTE 77-3, promulgated

by the DOL, permits investment in affiliated mutual funds.[40] These exemptions have conditions:

Section 408(b)(8) applies so long as, among other things, the affiliate "receives not more than

reasonable compensation." PTE 77-3 similarly requires dealings between the plan and the

mutual fund to be "on a basis no less favorable to the plan than such dealings are with other

shareholders of the investment company."[41]

Where it is clear from a complaint that the use of proprietary funds is consistent with the

exemptions, courts have sensibly dismissed prohibited transaction claims at the pleading stage.

*See, e.g.*, *Leber v. Citigroup, Inc.*, No. 07 Civ. 9329(SHS), 2010 WL 935442, at *10 (S.D.N.Y.

Mar. 16, 2010) (dismissing claim because, "even in the light most favorable to plaintiffs, the

complaint asserts nothing more than that defendants purchased shares in an affiliated mutual

fund, a transaction to which 'the restrictions of section [] 406 . . . shall not apply'").[42] This is

especially true where the complaint anticipates the defense "and thus put[s] it in play." *See*

*Hecker*, 556 F.3d at 581.[43]

Here, the Complaint puts the exemptions into play by alleging that "ACIM dealt with

Plan participants on a basis less favorable than its dealings with other shareholders." Compl.

¶ 79. Although the Complaint anticipates the defense—thereby allowing it to be decided on this

motion—the allegation is insufficient to rebut the defense because it is based solely on Plaintiffs'

---

[40] 42 Fed. Reg. at 18,734-35.

[41] 42 Fed. Reg. at 18,735.

[42] *See also Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510-11 (E.D. Pa. 2001)
(dismissing claim because "[p]laintiffs do not allege that the fees paid by the Plans are not in
compliance with the requirements of PTE 77-3, or that the Plans have had dealings with the . . .
[f]unds on terms that are less favorable than are offered to other shareholders").

[43] *Braden* declined to dismiss based on the potential availability of exemptions, 588 F.3d at 601,
but there the plaintiff had not put the issue into dispute in his complaint. *See generally* Compl.,
No. 08-cv-03109 (W.D. Mo. Mar. 27, 2008).

irrelevant argument that Plan fiduciaries should have immediately transferred investments into R6 shares.[44]  The relevant exemption asks whether plan participants were dealt with as "favorabl[y]" as "other shareholders" in the same investment—not whether different share classes of the affiliated mutual funds were available.[45]

Because the Complaint pleads facts relevant to the exemptions, but does not plead any facts that would be inconsistent with their availability, Counts III and IV should be dismissed.

### D.     Plaintiffs Fail to State a Claim for Equitable Restitution

Count V seeks equitable restitution under ERISA § 502(a)(3) against ACIM, ACS, and ACC in their capacity as employers who sponsor the Plan.  This count fails because (i) Plaintiffs are not eligible for equitable restitution, and (ii) Plaintiffs make only conclusory allegations that ACIM, ACS and ACC have received "ill-gotten proceeds."  Compl. ¶ 147.

As the Supreme Court has held, "the term 'equitable relief' in § 502(a)(3) must refer to those categories of relief that were typically available in equity."  *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citation omitted); *accord Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016).  Restitutionary remedies such as constructive trusts are available in equity only "where money or property identified as belonging in good conscience to the plaintiff c[an] clearly be traced to particular funds or property in the defendant's possession."  *Great-W.*, 534 U.S. at 213.  Otherwise, they constitute requests for restitution at law or money damages that are not permitted under § 502(a)(3).  *Id.* at 209-10.  Accordingly, the Eighth Circuit has affirmed dismissal of claims for disgorgement of excessive fees where the fees cannot be traced to particular funds or property in

---

[44] Since Mr. Borcherding left the Plan prior to the 2013 introduction of R6 shares, he cannot state this claim because he could not have been harmed by the lack of use of R6 shares.  *See* Compl. ¶ 15.

[45] *See generally* 42 Fed. Reg. at 18,734-35.

the defendants' possession.  *See, e.g.*, *Pichoff v. QHG of Springdale*, *Inc.*, 556 F.3d 728, 731-32 (8th Cir. 2009); *Calhoon v. Trans World Airlines, Inc.*, 400 F.3d 593, 598 (8th Cir. 2005).

Plaintiffs have failed to plead entitlement to this relief.  They allege only in conclusory fashion that the funds they seek to be disgorged "are traceable to specific transactions that have taken place on specific dates."  Compl. ¶ 149.  Plaintiffs have not alleged, nor could they, that (i) the funds' advisers have segregated the fees received from such investments from any other mutual fund fees or other revenues they receive, (ii) or that those specific fees are ***currently held*** in traceable or segregated accounts.  Therefore, even though Plaintiffs style their request as one for "equitable restitution" or a constructive trust, it is in fact a request for restitution at law or money damages and therefore impermissible under ERISA § 502(a)(3).  *See Calhoon*, 400 F.3d 598.

Count V also fails to state a claim because there are no well-pleaded allegations that the fees received from the mutual funds were excessive in relation to the services rendered, or that the corporate Defendants had the requisite knowledge of excessiveness so as to be liable for equitable remedies.  The Supreme Court only allows a plaintiff to recover from non-fiduciaries under ERISA § 502(a)(3) where the non-fiduciaries "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful."  *Harris Trust & Sav. Bank v. Salomon Smith Barney*, 530 U.S. 238, 251 (2000).

Here, there are only conclusory allegations that "[t]he American Century entities knew that the proprietary investments in the Plan were excessively costly and performed poorly in comparison to other investment alternatives."  Compl. ¶ 151.  *See also id.* ¶ 24 ("ACS . . . receives unreasonably high compensation" as the transfer agent); *id.* ¶ 34 (ACIM collects "unreasonably high" investment management fees).  Given that the fees fall within the range that

other courts have held creates no inference of a breach of duty, *supra* p. 14, this conclusory allegation of excessiveness is implausible.  Further, in light of Plaintiffs' own allegations that only two of approximately sixty funds underperformed, and the lack of any allegation about the funds' services, there is no pleaded basis to infer any knowledge of poor performance.[46] Plaintiffs' claim for equitable restitution should therefore be dismissed.

**CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  August 18, 2016                    Respectfully submitted,


**BRYAN CAVE LLP**


By: */s/ W. Perry Brandt*
     W. Perry Brandt            MO # 28292
     1200 Main Street, Suite 3500
     Kansas City, MO 64105
     (816) 374-3200
     (816) 374-3300 (Fax)
     perry.brandt@bryancave.com

**GOODWIN PROCTER LLP**
James O. Fleckner (*admitted pro hac*)
Alison V. Douglass (*admitted pro hac*)
Dave Rosenberg (*admitted pro hac*)
100 Northern Avenue
Boston, MA  02210
(617) 570-1000
(617) 523-1231 (Fax)
jfleckner@goodwinlaw.com
adouglass@goodwinlaw.com
drosenberg@goodwinlaw.com

**ATTORNEYS FOR DEFENDANTS**

ACTIVE/87049437

---

[46] Count V should also be dismissed as to ACC and the Committee and its members because it contains no allegations that they ever received any challenged fees.  *See id.* ¶¶ 25-33, 36.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on this 18th day of August, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

Michael F. Brady
Mark Kistler
Brady & Associates
10985 Cody Street, Suite 135
Overland Park, Kansas 66210
Phone: (913) 696-0925
Fax: (913) 696-0468
Email: brady@mbradylaw.com

Kai H. Richter
Carl F. Engstrom
Jacob T. Schutz
Nichols Kaster, PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Phone: (612) 256-3200
Fax: (612) 338-4878
Email: krichter@nka.com

Attorneys for Plaintiff

*s/ W. Perry Brandt*
W. Perry Brandt