# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI - WESTERN DIVISION

STEVE WILDMAN AND JON                    )
BORCHERDING, INDIVIDUALLY AND            )
AS REPRESENTATIVES OF A CLASS            )
OF SIMILARLY SITUATED PERSONS,           )
AND ON BEHALF OF THE AMERICAN            )
CENTURY RETIREMENT PLAN,                 )
                                         )
                        Plaintiffs,      )     CASE NO.  16-CV-737
v.                                       )
                                         )
AMERICAN CENTURY SERVICES, LLC,          )
THE AMERICAN CENTURY                     )
RETIREMENT PLAN RETIREMENT               )
COMMITTEE, AMERICAN CENTURY              )
INVESTMENT MANAGEMENT, INC.,             )
AMERICAN CENTURY COMPANIES,              )
INC., CHRISTOPHER BOUFFARD,              )
BRADLEY C. CLOVERDYKE,                   )
JOHN A. LEIS, TINA S. USSERY-            )
FRANKLIN, MARGARET E. VAN                )
WAGONER, GUDRUN S. NEUMANN,              )
JULIE A. SMITH, MARGIE A.                )
MORRISON, CHAT COWHERD, DIANE            )
GALLAGHER AND JOHN DOES 1-20,            )
                                         )
                        Defendants.      )

# SUGGESTIONS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE FIRST
# AMENDED COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ............................................................................................................... 3

I.     The American Century Retirement Plan .......................................................... 3

II.    Plaintiffs' Allegations .................................................................................... 5

ARGUMENT ................................................................................................................... 6

I.     Plaintiffs' Claims Are Barred by ERISA's Statute of Limitations ..................... 6

II.    Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted ................. 9

     A.    Standards Governing Dismissal Under Rule 12(b)(6) and ERISA ....................... 9

     B.    Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty ............................ 10

          1.    The Plan's Use of American Century Funds ........................................... 11

          2.    Existence of Alternative Investment Options with Cheaper Fees ........... 13

          3.    Recordkeeping Costs .......................................................................... 15

          4.    Purported Delay in Moving to Lower-Cost Share Classes ...................... 17

          5.    Offering Money Market Funds and Not Stable Value Funds .................. 19

          6.    Allegedly Under-Performing Funds ....................................................... 20

     C.    Plaintiffs Fail to State any Prohibited Transaction Claim ................................. 22

     D.    Plaintiffs Fail to State a Claim for Equitable Restitution .................................. 23

CONCLUSION ................................................................................................................ 25

Case 4:16-cv-00737-DGK   Document 35   Filed 10/04/16   Page 2 of 33

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................9, 13

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011)............................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................9, 11

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) ........................................................................10, 22

*Calhoon v. Trans World Airlines, Inc.*,
400 F.3d 593 (8th Cir. 2005) ........................................................................24

*Conkright v. Frommert*,
559 U.S. 506 (2010)........................................................................................10

*Crocker v. RV Pharm. Co.*,
782 F. Supp. 2d 760 (E.D. Mo. 2010)............................................................10, 21

*Dupree v. The Prudential Ins. Co. of Am.*,
No. 99-8837, 2007 WL 2263892 (S.D. Fla. Aug. 7, 2007) ........................12

*Durand v. Hanover Ins. Group. Inc.*,
No. 07-130, 2011 WL 1302227 (W.D. Ky. Mar. 31, 2011) ........................8

*Fifth Third Bancorp v. Dudenhoeffer*,
134 S. Ct. 2459 (2014)....................................................................................10

*Forseth v. Bank of Am., N.A.*,
No. 13-38, 2013 WL 2297036 (D. Minn. May 24, 2013)..........................16

*Great-W. Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002)........................................................................................ 23

*Halderman v. City of Iberia*,
No. 09-4049, 2009 WL 1912531 (W.D. Mo. July 1, 2009)........................9

*Harris Trust & Sav. Bank v. Salomon Smith Barney*,
530 U.S. 238 (2000)........................................................................................24

*Hecker v. Deere & Co.*,
556 F.3d 575 (7th Cir. 2009) ........................................................................14, 15, 19, 22

ii

*IATSE Local 33 Section 401(k) Plan Bd. of Trs. v. Bullock*,
    No. 08-3949, 2008 WL 4838490 (C.D. Cal. Nov. 5, 2008) ....................................................25

*In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*,
    661 F. Supp. 2d 861 (S.D. Ohio 2009) ...............................................................................14

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
    No. 11 Civ. 5127, 2012 WL 3191961 (S.D.N.Y. Aug. 7, 2012) .........................................21

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
    129 F. Supp. 3d 4 (S.D.N.Y. 2015) ....................................................................................21

*Leber v. Citigroup, Inc.*,
    No. 07 Civ. 9329, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010) .........................................22

*Leimkuehler v. Am. United Life Ins. Co.*,
    713 F.3d 905 (7th Cir. 2013) ........................................................................................16, 18

*Markewich v. Collins*,
    622 F. Supp. 2d 802 (D. Minn. 2009) ...................................................................................3

*McCaffree Fin. Corp. v. Principal Life Ins. Co.*,
    811 F.3d 998 (8th Cir. 2016) ...............................................................................................10

*Mehling v. N.Y. Life Ins. Co.*,
    163 F. Supp. 2d 502 (E.D. Pa. 2001) ..................................................................................22

*Olsen v. FMG Benefit Servs., Inc.*,
    No. 4:08-cv-00475, 2008 WL 2132121 (E.D. Mo. May 20, 2008) .......................................3

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)..........................................................................................10, 20

*Pichoff v. QHG of Springdale, Inc.*,
    556 F.3d 728 (8th Cir. 2009) ...............................................................................................24

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011)............................................................................................14, 15

*Ruppert v. Principal Life Ins. Co.*,
    813 F. Supp. 2d 1089 (S.D. Iowa 2010) ............................................................................6, 8

*Smithrud v. City of St. Paul*,
    746 F.3d 391 (8th Cir. 2014) ...............................................................................................16

*Tibble v. Edison Int'l*,
    729 F.3d 1110 (9th Cir. 2013) .......................................................................................14, 15

iii

*Tussey v. ABB Inc.*,
    746 F.3d 327 (8th Cir. 2014) ...................................................................................13, 20

*Varner v. Peterson Farms*,
    371 F.3d 1011 (8th Cir. 2004) ...........................................................................................6

*United States v. Kubrick*,
    444 U.S. 111 (1979)............................................................................................................9

*White v. Chevron Corp.*,
    5 No. 16-cv-0793, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .................14, 15, 16, 18. 20

*Wright v. Heyne*,
    349 F.3d 321 (6th Cir. 2003) .............................................................................................9

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
    550 F. Supp. 2d 416 (S.D.N.Y. 2008)..........................................................................6, 7, 8

**Statutes**

15 U.S.C. § 77e(b)(2)................................................................................................................8

29 U.S.C. § 1023 (ERISA § 103) .............................................................................................8

29 U.S.C. § 1104(a) (ERISA § 404(a))........................................................................5, 10, 12

29 U.S.C. § 1106(a) (ERISA § 406(a))......................................................................................6

29 U.S.C. § 1106(b) (ERISA § 406(b)) .....................................................................................6

29 U.S.C. § 1108(b)(5) (ERISA § 408(b)(5)).........................................................................11

29 U.S.C. § 1108(b)(8) (ERISA § 408(b)(8)) ....................................................................11, 22

29 U.S.C. § 1113(2) (ERISA § 413(2)) .....................................................................................6

29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) ...................................................................6, 23, 24

**Other Authorities**

17 C.F.R. § 210.6-07(2) (1995) ................................................................................................8

17 C.F.R. § 270.30e-1 (2014) ...................................................................................................8

17 C.F.R. § 274.11A (1994) .....................................................................................................8

29 C.F.R. § 2520.103-1 (2013) .................................................................................................8

29 C.F.R § 2550.404a-5 (2015) ................................................................................................8

29 C.F.R § 2550.404a-5(c) (2015)..............................................................15

29 C.F.R § 2550.404a-5(d) (2015)..............................................................15

29 C.F.R 2550.404a-5(d)(iv)(a)(4) (2015).................................................14

ACIM, What Sets Us Apart,
    https://corporate.americancentury.com/content/americancentury/corporate/en/
    about-us/what-sets-us-apart.html (last visited Sept. 28, 2016) ...................................1

Best Interest Contract Exemption, 81 Fed. Reg. 21,002 (Apr. 8, 2016)....................................2, 12

Compl., *Braden v. Wal-Mart Stores, Inc.*, No. 08-cv-03109 (W.D. Mo. Mar. 27,
    2008) .............................................................................................22

Class Exemption Involving Mutual Fund In-House Plans, 42 Fed. Reg. 18,734,
    18,735 (Mar. 31, 1977) .................................................................2, 11, 22, 23

Dawn Kopecki, Christopher Condon, and Andrew Harris, *JPMorgan Loses $373
    Million Arbitration to American Century* (Mar. 22, 2012), *available at*
    http://www.bloomberg.com/news/articles/2012-03-22/jpmorgan-told-to-pay-
    373-million-in-american-century-funds-case .........................................................17

Default Investment Alternatives Under Proposed Directed Individual Account
    Plans, 72 Fed. Reg. 60,452 (Oct. 24, 2007) ....................................................19, 20

DOL, *A Look at 401(k) Plan Fees* (2013), *available at* http://www.dol.gov/
    ebsa/publications/401k_employee.html.............................................................13

DOL Advisory Op. 2013-03A, 2013 WL 3546834 ..........................................................18

Fed. R. Civ. P. 12(b)(6).................................................................................9

H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N.
    5,038............................................................................................11

Notice of Proposed Rule-Making, Participant Directed Individual Account Plans,
    56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991) .......................................................2

Stowers Institute for Medical Research, James E. Stowers, Jr.,
    http://www.stowers.org/James-E-Stowers (last visited Sept. 28, 2016).....................................1

U.S. Government Accountability Office, 401(k) Plans: Certain Investment
    Options and Practices that May Restrict Withdrawals Not Widely Understood
    (Mar. 2011), www.gao.gov/new.items/d11291.pdf (last visited Sept. 28, 2016)....................19

## INTRODUCTION

In response to Defendants' motion to dismiss Plaintiffs' original complaint (ECF No. 17), Plaintiffs filed the First Amended Class Action Complaint ("Complaint" or "Compl.") (ECF No. 28), revising certain of their allegations. However, the amendment does not cure the fatal infirmities in Plaintiffs' claims. As such, and given that this is Plaintiffs' second bite at the apple, the Complaint should be dismissed with prejudice.

American Century Investment Management, Inc. ("ACIM," with affiliates, "American Century") is a leading financial services firm based in Kansas City, Missouri, founded in 1958.[1] More than 40% of its profits support research to cure genetically-based diseases such as cancer, diabetes and dementia,[2] and the company's late founder was once ranked by Forbes Magazine as one of the ten "most generous people on the planet" due to his charitable giving.[3] ACIM, and other participating employers in the retirement savings plan made available to their employees, the American Century Retirement Plan (the "Plan"), contribute 11% of eligible participants' income to their Plan accounts. Plaintiffs, two former employees of the company, ask the Court to disregard this giving, and assume instead that defendants acted disloyally and imprudently through American Century's longstanding practice of offering their employees the same high-quality investments that they make available to their customers. Because this inference, and Plaintiffs' entirely speculative theory, has no basis in law or the pleaded facts, the Complaint should be dismissed for failure to state a claim.

---

[1] ACIM, What Sets Us Apart, https://corporate.americancentury.com/content/ americancentury/corporate/en/about-us/what-sets-us-apart.html (last visited Sept. 28, 2016).

[2] *Id.*

[3] Stowers Institute for Medical Research, James E. Stowers, Jr., http://www.stowers.org/James-E-Stowers (last visited Sept. 28, 2016).

There is nothing unusual or wrong about American Century using its own products for the Plan. The inference underpinning the Plaintiffs' claims has been debunked by the principal regulator for employee plans, the United States Department of Labor ("DOL"). Long ago, the DOL expressly authorized financial services companies like American Century to include their own mutual funds in their benefit plans, explaining that it would run "contrary to normal business practice for a company whose business is financial management to seek financial management services from a competitor."[4] Earlier this year it reaffirmed that principal by exempting from new fiduciary rules financial institutions that offer proprietary products.[5] Moreover, the Plan is **not** limited solely to ACIM funds. Rather, Plan participants (employees and former employees) can utilize the Plan's self-directed brokerage account and choose from a vast array of stocks, exchange-traded funds ("ETFs"), and mutual funds, including many low-fee funds and thousands of funds not advised by ACIM or any American Century entity.

Because the factual allegations do not give rise to any plausible inference of disloyal or imprudent conduct, the Complaint should be dismissed.

In addition, the Complaint suffers from numerous other fatal defects:

- The pleaded facts, stripped of conclusions and rhetoric, demonstrate that ERISA's three-year statute of limitations bars Plaintiffs' claims because the relevant facts were known or apparent to Plaintiffs more than three years ago.

- ERISA exempts the transactions Plaintiffs challenge from its prohibited transaction rules.

- Plaintiffs fail to state a claim for equitable restitution because Plaintiffs seek money damages and not a form of relief that is available in equity.[6]

---

[4] Notice of Proposed Rule-Making, Participant Directed Individual Account Plans, 56 Fed. Reg. 10,724, 10,730 (Mar. 13, 1991); *see also* Class Exemption Involving Mutual Fund In-House Plans, 42 Fed. Reg. 18,734, 18,735 (Mar. 31, 1977).

[5] Best Interest Contract Exemption, 81 Fed. Reg. 21,002, 21,053 (Apr. 8, 2016).

[6] Defendants have separately moved for summary judgment (ECF No. 19) on the ground that Plaintiffs' claims are barred by the releases and covenants not to sue that they executed.

2

# BACKGROUND

## I.     The American Century Retirement Plan

The Plan is among the generous benefits American Century offers to eligible employees. Compl. ¶ 19.  The Plan is designed to allow employees to accumulate assets on a tax-deferred basis as a way "to provide retirement income for Plan participants."[7]  American Century has made this benefit available since at least 1966.  *See* Compl. ¶ 16.

Under the Plan, employees can elect to contribute anywhere from 1% to 80% of their salary to their Plan account.[8]  American Century makes matching contributions of up to 4% of each eligible employee's total compensation.[9]  American Century also makes additional discretionary profit sharing contributions in the form of cash and American Century Companies, Inc. ("ACC") common stock.  The cash is allocated to the employees' chosen investment options, and the stock may be held or sold in each employee's discretion.[10]  The proceeds of any stock that is sold may then be allocated to other investments made available through the plan, including through the self-directed brokerage account.[11]  In 2015, American Century's total

---

[7] American Century Retirement Plan Summary Plan Description ("Summary Plan Description"), Appendix A, at ACI-MTD2-0031, Declaration of David Rosenberg in Support of Defendants' Motion to Dismiss the First Amended Complaint ("Rosenberg Decl.") Ex. 1, submitted herewith. Relevant Plan documents and public filings are provided for this Court's reference as exhibits to the Rosenberg Decl.  Plaintiffs reference these documents, and courts in this circuit routinely consider them when resolving motions to dismiss.  *See, e.g.*, Compl. ¶¶ 23, 27-30, 32-34, 60, 74, 76, 94 (discussing the Plan's Forms 5500); Compl. ¶¶ 16, 22-24, 26, 77 (discussing the Plan documents).  *See Olsen v. FMG Benefit Servs., Inc.*, No. 4:08-cv-00475, 2008 WL 2132121, at *2-3 (E.D. Mo. May 20, 2008) (considering ERISA plan documents on a motion to dismiss); *Markewich v. Collins*, 622 F. Supp. 2d 802, 806 (D. Minn. 2009) (considering public filings).

[8] Compl. ¶ 20; 2014 Restatement of the American Century Retirement Plan ("Plan Document") § 4.2(a), ACI-MTD2-0071, Rosenberg Decl. Ex. 2.

[9] Compl. ¶ 20; Plan Document § 4.1(b), ACI-MTD2-0070, Rosenberg Decl. Ex. 2.

[10] *See* Summary Plan Description at ACI-MTD2-0012-13, Rosenberg Decl. Ex. 1.
[11] Plan Document § 4.1(c), ACI-MTD2-0070, Rosenberg Decl. Ex. 2; 2015 Form 5500 at ACI-MTD2-0149, Rosenberg Decl. Ex. 3.

3

matching and discretionary contributions were equal to 11% of eligible employees' total compensation, or $17,073,716.[12]  In total, American Century contributed approximately $107 million to the Plan between 2010 and 2015—averaging approximately $18 million per year.[13]

The Plan is participant-directed, meaning that each participant can allocate the amounts credited to her Plan account to any available investment option, other than an ACC common stock fund.  As publicly disclosed in the Plan's regulatory filing, the Plan's core options as of the end of the last reported year, 2015, consisted of a broad array of twenty-five mutual funds, fifteen collective trusts, and the company stock fund.[14]  The options include a wide range of asset categories, including domestic and international funds, equity and fixed income funds, and funds offering different levels of risk and potential reward.[15]  The Plan also makes available a self-directed brokerage window offered by an unaffiliated entity (the "Schwab Personal Choice Retirement Account") through which participants can invest up to 100% of their Plan account balance in a much larger universe of stocks, ETFs, and mutual funds, including low-fee index funds and thousands of funds not advised by ACIM or its affiliates.[16]

Not surprisingly, the Plan is very popular with employees.  From 2010 through 2015, employees contributed over $66 million of their eligible compensation to the Plan.[17]  Further,

---

[12] 2015 Form 5500 at ACI-MTD2-0147, Rosenberg Decl. Ex. 3.  Prior to 2013, Plan employers additionally contributed 5% of eligible employee's total compensation as a non-discretionary fixed contribution.  Plan Document § 4.1(e), ACI-MTD2-0070, Rosenberg Decl. Ex. 2.

[13] 2015 Form 5500 at ACI-MTD2-0147, Rosenberg Decl. Ex. 3; 2014 Form 5500 at ACI-MTD2-0158, Rosenberg Decl. Ex. 4; 2013 Form 5500 at ACI-MTD2-0168, Rosenberg Decl. Ex. 5; 2012 Form 5500 at ACI-MTD2-0177, Rosenberg Decl. Ex. 6; 2011 Form 5500 at ACI-MTD2-0184, Rosenberg Decl. Ex. 7; 2010 Form 5500 at ACI-MTD2-0191, Rosenberg Decl. Ex. 8.

[14] 2015 Form 5500 at ACI-MTD2-0151-53, Rosenberg Decl. Ex. 3.

[15] *Id.*

[16] *See* Summary Plan Description at ACI-MTD2-0013, Rosenberg Decl. Ex. 2.

[17] 2015 Form 5500 at ACI-MTD2-0147, Rosenberg Decl. Ex. 3; 2014 Form 5500 at ACI-MTD2-

4

although participants who leave American Century are allowed to withdraw their Plan account balances and roll them over to another plan or individual retirement account on a tax-free basis, over one-third of former employees (including Plaintiff Wildman) had decided to leave their assets in the Plan as of December 31, 2015.[18] As a result of the Plan's superb design, funding options, pricing, and operation, Plan participants are surpassing most Americans in accumulating assets for retirement: the average participant account balance in the Plan is almost **four times** the national average.[19]

## II. Plaintiffs' Allegations

Plaintiffs, two former employees, have sued American Century Services, LLC ("ACS"), ACIM, ACC, the American Century Retirement Plan Retirement Committee (the "Committee"),[20] and individual Committee members (collectively, "Defendants"). Plaintiffs assert class claims on behalf of "[a]ll participants and beneficiaries of the [Plan] at any time on or after June 30, 2010." Compl. ¶¶ 14-15, 122. Count I alleges that Defendants breached their fiduciary duties of prudence and loyalty under ERISA § 404(a), 29 U.S.C. § 1104(a), by failing to monitor the Plans' investment options and removing imprudent ones. *Id.* ¶¶ 130-37. Plaintiffs

---

0158, Rosenberg Decl. Ex. 4; 2013 Form 5500 at ACI-MTD2-0168, Rosenberg Decl. Ex. 5; 2012 Form 5500 at ACI-MTD2-0177, Rosenberg Decl. Ex. 6; 2011 Form 5500 at ACI-MTD2-0184, Rosenberg Decl. Ex. 7; 2010 Form 5500 at ACI-MTD2-0191, Rosenberg Decl. Ex. 8.

[18] 2015 Form 5500 at ACI-MTD2-0145, Rosenberg Decl. Ex. 3; *see also* Compl. ¶ 14.

[19] *Compare* 2012 Form 5500 at ACI-MTD2-0175, 177, Rosenberg Decl. Ex. 6 (the Plan's average balance, determined by plan assets divided by number of participants, is approximately $236,446) *with* Investment Company Institute, A Close Look at 401(k) Plans at ACI-MTD2-0200 (Dec. 2014) (cited in Compl. ¶¶ 54, 64, 75), Rosenberg Decl. Ex. 9 (national average plan account balance was $61,168 as of 2012).

[20] Defendants expressly reserve their right to assert that the Committee is not an entity capable of being sued, and all other defenses, should this motion and the parallel summary judgment motion be denied.

Case 4:16-cv-00737-DGK   Document 35   Filed 10/04/16   Page 11 of 33

admit that they have no knowledge of Defendants' process, *id.* ¶ 120, but they contend that a

breach is "apparent from the Plan's menu of designated investment alternatives". *Id.* ¶ 72.

Count II alleges that ACS failed to adequately monitor the Committee. Compl. ¶¶ 138-

45. Counts III and IV allege that Defendants breached ERISA's technical prohibited transaction

requirements. *Id.* ¶¶ 146-58 (alleging violations of ERISA § 406(a), 29 U.S.C. § 1106(a) (Count

III), and ERISA § 406(b), 29 U.S.C. § 1106(b) (Count IV)). Count V seeks equitable restitution

from the corporate Defendants under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). *Id.* ¶¶ 159-65.

## ARGUMENT

Plaintiffs' claims fail because they are barred by the statute of limitations and because

each Count fails to state a claim.

### I.     Plaintiffs' Claims Are Barred by ERISA's Statute of Limitations

The Complaint should be dismissed because, on its face, it is barred by ERISA's three-

year statute of limitations.[21] ERISA § 413(2) precludes claims that are filed more than "three

years after the earliest date on which the plaintiff had actual knowledge of the breach or

violation." 29 U.S.C. § 1113(2). In applying this provision, courts have "focused on whether

documents provided to plan participants sufficiently disclosed the alleged breach of fiduciary

duty, not whether the individual plaintiffs actually saw or read the documents." *Young v. Gen.*

*Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 n.3 (S.D.N.Y. 2008), *aff'd on other grounds*,

325 F. App'x 31 (2d Cir. 2009); *see also Ruppert v. Principal Life Ins. Co.*, 813 F. Supp. 2d

1089, 1102 (S.D. Iowa 2010) (disclosures in "ERISA-required reports, such as the Form 5500"

are sufficient to constitute actual knowledge).

---

[21] As the Eighth Circuit has held, affirmative defenses such as ERISA's statute of limitations
may be raised on a motion to dismiss if the facts establishing the defense are "clear from the face
of the complaint." *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004).

Indeed, courts have dismissed as time-barred ERISA claims similar to these that challenge the selection of funds as investment options for a retirement plan where the use of the challenged funds had been fully disclosed for more than three years prior to suit. *See, e.g.*, *Young*, 550 F. Supp. 2d at 419. As *Young* explained, because it was "undisputed that Plaintiffs had actual knowledge that the Plans offered the [challenged] Funds as investment options" more than three years before they filed suit, and because information concerning "the fees and expenses associated with the . . . Funds" had indisputably been made available to participants, plaintiffs' claims were time-barred. *Id.* at 420.

Here, the public record and Plaintiffs' own allegations demonstrate that Plaintiffs had knowledge of the salient facts more than three years before filing suit. Plaintiffs allege that their claims are "apparent" from looking at the Plan line-up, which consists of entirely American Century funds (aside from the brokerage window). Compl. ¶ 72. Plaintiffs have demonstrated that there has been no material change in the challenged attributes for more than three years: they allege that American Century funds have been offered since 2010; that the total plan costs and recordkeeping costs have allegedly been excessive since then; that the money market funds allegedly underperformed stable value alternatives since 2010; and that the Vista Fund and American Century International Bond Fund have underperformed since at least 2010. *Id*. ¶¶ 70 n.6, 74-75, 93, 110, 113-15, 117-19. Indeed, performance measures cited by Plaintiffs are taken directly from a 2010 publicly-filed fund prospectus. *Id.* ¶ 117.

Recognizing that they have pleaded themselves out of court, Plaintiffs assert that they did not have actual knowledge of their claims until "shortly before this action was filed" because they did not have knowledge of the "availability of less expensive investment alternatives" and their performance, "the costs of the Plan's investments [and overall costs] compared to those in

similar plans," and the Plan's recordkeeping costs. Compl. ¶ 120. This purported justification fails to salvage their claims for two reasons. First, ERISA's statute of limitations is not tolled until a plaintiff has knowledge of "every last detail" of his claim. *Ruppert*, 813 F. Supp. 2d at 1102. In challenges to plan investments, like here, it is enough that Plaintiffs had knowledge of the Plan's investments and their fees. *See, e.g.*, *Young*, 550 F. Supp. 2d at 419. Second, the relevant public filings show that even the information Plaintiffs identify as being unknown to them was, in fact, available more than three years before filing the Complaint. Information on fund fees and performance was provided to investors and is also available to all participants,[22] and similar data are publicly available for comparable funds and plans.[23]

In separate filings with this Court, Plaintiffs have declared that they first became aware of these public facts when they "communicate[ed] with [their] attorneys in" or about "April 2016, and learn[ed] of an investigation [by their attorneys] into the Plan."[24] This is patently insufficient and runs contrary to the policies underpinning the statute of limitations. The United States District Court for the Western District of Kentucky expressly rejected this argument, dismissing an ERISA class action where plaintiffs argued that they did not have actual knowledge "until their counsel told them" about their findings. *Durand v. Hanover Ins. Group. Inc.*, No. 07-130, 2011 WL 1302227, at *5-6 (W.D. Ky. Mar. 31, 2011). The Sixth Circuit explained the rationale:

---

[22] *See* Summary Plan Description at ACI-MTD2-0031, Rosenberg Decl. Ex. 1; *infra* n.20.

[23] Information on fees and performance is required to be disclosed under federal securities law and ERISA. *See* 15 U.S.C. § 77e(b)(2); 17 C.F.R. §§ 210.6-07(2) (1995); 270.30e-1 (2014); 274.11A (1994); 29 C.F.R § 2550.404a-5 (2015) (requirement of quarterly fee disclosure). Plaintiffs further concede that the amount of recordkeeping fees is disclosed in the public Forms 5500. Compl. ¶¶ 94, 101. Other ERISA-governed plans are also required to publicly file Form 5500. *See* ERISA § 103, 29 U.S.C. § 1023; 29 C.F.R. § 2520.103-1 (2013).

[24] *See* Decl. of Jon Borcherding ¶ 20 (ECF No. 32-1); Decl. of Steve Wildman ¶ 20 (ECF No. 32-2); *see also* Pls.' Suggestions in Opp. to Defs.' Mot. for Summary J. at 7, ¶ 17 (ECF No. 32).

> If the statute were tolled until an attorney informs the plaintiff that he or she has an ERISA claim, a plaintiff could delay accrual of a claim simply by waiting before consulting an attorney. This would nullify the three-year limitation period of Section 1113(2), something Congress surely did not intend to result when it enacted the statute.

*Wright v. Heyne*, 349 F.3d 321, 331 (6th Cir. 2003). *Accord United States v. Kubrick*, 444 U.S. 111, 123 (1979) ("to excuse" a plaintiff from promptly seeking legal advice "would undermine the purpose of the limitations statute").

Accordingly, Plaintiffs' claims—which are based on information provided them and the public—are time-barred, regardless of when Plaintiffs learned of their lawyers' investigation.[25]

## II.     Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted

The Complaint should also be dismissed for failure to state a claim.

### A.     Standards Governing Dismissal Under Rule 12(b)(6) and ERISA

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff must provide "direct or inferential allegations respecting all the material elements" of her claims. *Id.* at 562. "Conclusory statements . . . do not suffice" to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor do allegations contradicted by documents properly subject to judicial notice or referenced in the complaint. *See Halderman v. City of Iberia*, No. 09-4049, 2009 WL 1912531, at *3 (W.D. Mo. July 1, 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Factual allegations that are merely "consistent with" unlawful conduct do not state a claim where "more likely explanations" or "obvious alternative explanations" of lawful conduct exist. *Id.* at 682.

---

[25] Certain of Plaintiffs' claims also may fail ERISA's separate six-year statute of repose.

These principles apply equally to ERISA claims. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). In enacting ERISA, "Congress sought to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." *Conkright v. Frommert*, 559 U.S. 506, 517 (2010) (internal quotations and citation omitted). Because "ERISA imposes extensive disclosure requirements on plan administrators . . . plan beneficiaries (*i.e.*, prospective plaintiffs) [have] the opportunity to" discover claims. *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719-20 (2d Cir. 2013). Accordingly, the Supreme Court instructs that Rule 12(b)(6) is an "important mechanism for weeding out meritless [ERISA] claims." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471 (2014).

Consistent with these principles, courts routinely dismiss inadequately pled ERISA claims. Earlier this year, the Eighth Circuit affirmed dismissal of claims that an ERISA service provider charged excessive fees, relying on *Twombly* and *Iqbal*. *See McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1002, 1005 (8th Cir. 2016). In *Crocker v. RV Pharmaceutical Co.*, 782 F. Supp. 2d 760, 785-86 (E.D. Mo. 2010), the court dismissed a breach of loyalty claim where plaintiffs' circumstantial allegations of a conflict of interest failed to give rise to a plausible inference of an improper motivation for selecting an investment option.

These cases counsel in favor of dismissal here.

### B.     Plaintiffs Fail to State a Claim for Breach of Fiduciary Duty

The Complaint's initial count, for breach of ERISA's fiduciary duties, fails to state a claim because it does not adequately allege a deficient process for selecting investments.

A claim for breach of fiduciary duty under ERISA § 404(a) focuses on "the fiduciary's conduct preceding the challenged decision" and not the "results of those decisions." *Braden*, 588 F.3d at 595. As a result, a plaintiff must either plead factual allegations directly referring to a

10

fiduciary's investment decision-making process, or it must plead sufficient nonconclusory facts to establish a "plausible inference" of misconduct. *Id.* at 594, 598. Here, Plaintiffs concede that they do not allege any facts about the Defendants' process. Compl. ¶ 120. Instead, they ask the Court to infer an imprudent process based on six circumstantial allegations. But none of these circumstantial facts, either individually or in the aggregate, "nudge[] their claims across the line from conceivable to plausible" as required by *Twombly*, 550 U.S. at 570.

### 1. The Plan's Use of American Century Funds

Although Plaintiffs decry the Plan's use of American Century funds, the selection and retention of these funds does not give rise to a plausible inference of an imprudent process.

As Congress recognized, it is "common practice" for financial services companies to invest their own plans' assets in their own investment funds.[26] Consequently, ERISA includes two statutory exemptions from its prohibited transaction rules for the use of proprietary investment products in plans sponsored by banks and insurance companies. *See* ERISA §§ 408(b)(5), (8), 29 U.S.C. §§ 1108(b)(5), (8). In 1977, the DOL extended this relief to plans sponsored by mutual fund advisers and their affiliates to enable such plans to invest in their affiliated mutual funds pursuant to Prohibited Transaction Exemption ("PTE") 77-3.[27] In so doing, the DOL recognized that allowing mutual fund companies to make proprietary funds available under their employee benefit plans is "in the interests of plans and of their participants and beneficiaries" and "protective of the rights of participants and beneficiaries."[28] Just this year, the DOL issued an additional exemption that will expressly allow financial institutions and

---

[26] H.R. Conf. Rep. No. 93-1280 (Aug. 12, 1974), *reprinted in* 1974 U.S.C.C.A.N. 5,038, 5,096.

[27] *See* 42 Fed. Reg. at 18,734-35.

[28] *Id.* at 18,734.

their advisers, who will otherwise become fiduciaries under 29 C.F.R. § 2510.3-21(a) (applicable

April 10, 2017), to "limit the products that [they] offer to" proprietary investments.[29]

Given the numerous exemptions allowing financial institutions to use and promote their

own products in a fiduciary capacity, one court explained that no wrongdoing can be inferred

where plans sponsored by financial services companies include proprietary funds:  Conformity

with a commonplace "practice—the very result Congress [and the DOL] intended to approve by

enacting the[se] exemptions—does not give rise to an inference of disloyalty."  *Dupree v. The*

*Prudential Ins. Co. of Am.*, No. 99-8837, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 7, 2007)

(entering defense judgment).  As another court observed in dismissing a challenge to a plan's

investments, no inference of imprudence under ERISA § 404(a) can be inferred from compliance

with statutory provisions—even those that are distinct from § 404(a)—because doing so would

make those other provisions "contradictory."  *In re Bear Stearns Cos., Inc. Sec., Derivative, &*

*ERISA Litig.*, 763 F. Supp. 2d 423, 580 (S.D.N.Y. 2011) (dismissing claims, holding that

corporate officers can serve in fiduciary capacities notwithstanding allegations of conflict).

Any negative inference is further rebutted by the fact that the Plan also made available a

Schwab Personal Choice Retirement Account through which participants can invest their Plan

accounts in a large universe of stocks, ETFs, and mutual funds, including mutual funds and

investments not managed by ACIM and which would result in no fees to ACIM.  Plaintiffs'

claims are additionally implausible in light of the generous contributions that American Century

makes to the Plan—approximately $18 million on average ***per year*** between 2010 and 2015,

amounting to more than ***one hundred million dollars*** during the putative class period—an

amount that vastly exceeds the alleged "excess fees" that Plaintiffs claim ACIM received

---

[29] 81 Fed. Reg. at 21,053.

through the inclusion of its funds in the Plan's line-up.  *See* Compl. ¶¶ 74-76.  If the Defendants were motivated to increase American Century's profits, they could have eliminated the brokerage window, or reduced and/or eliminated the level of discretionary contributions.[30]

Given these facts, no inference of illicit self-interest is warranted.  The Court should not credit theories that defy "common sense."  *Iqbal*, 556 U.S. at 679.  "As between th[e] 'obvious alternative explanation'" for selecting American Century funds—that fiduciaries deemed it to be in the best interests of Plan participants to offer them the same funds as American Century offers its investors—and the disloyalty and intentional self-dealing that Plaintiffs ask the Court to infer, a deficient process "is not a plausible conclusion."  *Id.* at 682.[31]

### 2. Existence of Alternative Investment Options with Cheaper Fees

The Complaint's allegation that cheaper investments were available is also unavailing.

The Eighth Circuit holds that fiduciaries are entitled to substantial deference in selecting investments for a plan.  *Tussey v. ABB Inc.*, 746 F.3d 327, 335 (8th Cir. 2014) (reversing trial judgment for failure to afford discretion to fiduciary decision-making).  And the DOL cautions that fees should not be considered "in a vacuum" because "[t]hey are only one part of the bigger picture including ***investment risks and returns and the extent and quality of services*** . . . ."[32]

---

[30] In amending the Complaint, Plaintiffs add that employer contributions are generally made in 401(k) plans to "attract and retain talented employees."  Compl. ¶ 20 n.1.  Regardless of why contributions are made in the industry, the fact of their existence here, and the fact that the amounts American Century contributed to the Plan dwarf any alleged "profits" from the Plan (*id.* ¶¶ 6, 8), renders implausible any inference of wrongdoing.

[31] Plaintiffs' allegation that the Plan's summary plan description was changed in 2016 to state that the investment options were "generally" limited to proprietary funds because "ACS recognized potential liability" in offering only proprietary funds likewise is implausible in light of the obvious alternative explanation that the language was changed to reflect that Plan participants could invest in unaffiliated funds through the Schwab Personal Choice Retirement Account.  *See* Compl. ¶¶ 22, 77 & n.11.

[32] DOL, *A Look at 401(k) Plan Fees* at ACI-MTD2-00209 (2013) (emphasis added), *available at* http://www.dol.gov/ebsa/publications/401k_employee.html, Rosenberg Decl. Ex. 10.

13

Indeed, the DOL requires fiduciaries to disclose that "fees and expenses are only one of several factors that participants and beneficiaries should consider when making investment decisions."[33]

Given the wide latitude afforded to fiduciaries, and the fact that fees cannot be measured in a vacuum, reasonableness under ERISA is to be measured by a range—no one fee amount is alone "reasonable," and simply allowing a plan to incur greater expenses than some hypothetical average or some alternative fund does not amount to impropriety: "The fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009).[34] Where a "plan offers a diversified array of investment options, the fact that some other funds might offer lower expense ratios is not relevant." *White v. Chevron Corp.*, No. 16-cv-0793, 2016 WL 4502808, at *10 (N.D. Cal. Aug. 29, 2016) (granting motion to dismiss).

Accordingly, courts have held that plans offering funds with a range of expenses similar to the range here do not raise an inference of a deficient process. *Hecker*, 556 F.3d at 586 (range of fees for individual investments between 0.07% and 1.00% did not raise an inference of a deficient process); *Renfro v. Unisys Corp.*, 671 F.3d 314, 319 (3d Cir. 2011) (affirming dismissal where expense ratios ranged up to 1.21%); *see also Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013) (granting summary judgment where expense ratios ranged up to 2.00%), *rev'd on other grounds*, 135 S. Ct. 1823 (2015). The Seventh Circuit specifically noted that the availability of a self-directed brokerage window makes "[a]ny allegation that these options did

_____

[33] 29 C.F.R. § 2550.404a-5(d)(iv)(a)(4) (2015).

[34] *See also In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*, 661 F. Supp. 2d 861, 867 (S.D. Ohio 2009) (dismissing excessive fee claim where plaintiffs alleged that cheaper options were available because "nothing in ERISA requires the . . . Defendants as to search the market to find and offer the cheapest possible fund").

not provide the participants with a reasonable opportunity to . . . control the risk of loss from fees . . . implausible." *Hecker*, 556 F.3d at 590 (citing *Twombly*).

Here, Plaintiffs' claims fail under these cases. They allege that the estimated total Plan cost was higher than that of other plans by 0.20% and 0.21% in 2009-10 and 2013, without alleging the precise cost of the Plan, or how the performance or services of the Plan compared to other plans. Compl. ¶ 75 (alleging Plan fees of 0.73% compared to 0.53% for comparators in 2009-10, and 0.65% compared to 0.44% in 2013). Plaintiffs also allege that the mutual funds offered under the Plan had fees that range from 0.27% to 1.46%. *Id.* ¶ 76. By themselves, these expenses are well within the range other courts have held raise no inference of a deficient process. *See Renfro*, 671 F.3d at 319; *Tibble*, 729 F.3d at 1135. When making its claims about total plan costs, the Plaintiffs conveniently ignore the fees of the collective trusts and company stock option under the Plan—even though such expenses are known to Mr. Wildman through the disclosures required by 29 C.F.R §§ 2550.404a-5(c) and (d)—making the allegations as to mutual fund fees of even less probative value.

Finally, many of the funds identified by Plaintiffs as allegedly "comparable . . . funds" are passively managed index funds affiliated with an American Century competitor, the Vanguard Group, which are managed simply to own a representative sample of the market. Compl. ¶ 76. Courts have specifically rejected analogous claims of fiduciary breach with respect to actively managed funds with higher expenses than Vanguard index funds. *See, e.g.*, *White*, 2016 WL 4502808, at *10-11 (alleging that a plan failed to offer Vanguard funds do not state a claim for ERISA fiduciary breach).

### 3. Recordkeeping Costs

Plaintiffs next allege that the Plan's "high costs are also due in part to the excessive recordkeeping fees Defendants have caused it to pay." Compl. ¶¶ 86-102. These conclusory

15

allegations also fail to support an inference of an imprudent or disloyal process.

      *First*, Plaintiffs' allegations do not even allege the amounts of the recordkeeping fees. Plaintiffs concede that their allegations regarding the portion of the Plan's total costs that are paid to Schwab Retirement Services, Inc. ("Schwab")[35] are based on Plaintiffs' ***assumptions*** about how much they think Schwab ***might have been paid*** based on disclosures in the Plan's public filings. Compl. ¶ 101. Plaintiffs' assumptions are insufficient to state a claim. *White*, 2016 WL 4502808, at *15 (dismissing claim for failure to plead the amount of recordkeeping fees). *See generally Forseth v. Bank of Am.*, *N.A.*, No. 13-38, 2013 WL 2297036, at *4 (D. Minn. May 24, 2013) (assumptions are insufficient to meet a plaintiff's pleading burden).[36]

      *Second*, Plaintiffs fail to adequately plead how much a recordkeeper should have been paid. Plaintiffs allege that "[b]ased on [] investigation and analysis, the normal range of recordkeeping fees for a plan like the Plan would have been between $50 and $70 per participant from 2009 to 2012, and between $50 and $65 per participant from 2013 to the present." Compl. ¶ 93. But Plaintiffs provide no support for this statement, and no description of the investigation they purport to have based it upon. The Court therefore need not credit their statements, nor Plaintiffs' similarly conclusory allegation that fees charged by Schwab's predecessor, J.P. Morgan Retirement Plan Services ("JPMRPS"), were excessive merely because they exceeded this assumed reasonable fee. *See Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (court should reject allegations supported by "mere conclusory statements").

---

[35] The Seventh Circuit has described the "commonplace" method of compensating recordkeepers through "revenue sharing" of a portion of a fund's investment fees, in consideration of the recordkeeper performing "participant-level services that the [] fund would [otherwise] be furnishing." *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 908-09 (7th Cir. 2013).

[36] Since Mr. Borcherding ceased participating in the Plan in 2012, the Schwab fees are irrelevant as to him, given that Schwab began providing recordkeeping in 2013. Compl. ¶¶ 15, 97.

**Third**, Plaintiffs ask the Court to infer that the fees charged by Schwab and JPMRPS were excessive because of purported relationships between American Century and those entities. For example, Plaintiffs allege that Defendants "did not question" JPMRPS's fees because American Century "expect[ed]" that JPMRPS "would continue to promote ACIM funds" after a 2003 transfer of control. Compl. ¶ 95. But, as the Complaint and its sources concede, J.P. Morgan sold its stake in ACC in 2011 (Compl. ¶ 96), and the arrangement described in the revenue agreement Plaintiffs refer to broke down by 2009, with J.P. Morgan failing to promote ACIM funds.[37] Plaintiffs next imply that Defendants moved the Plan's recordkeeping business to Schwab because Schwab makes available certain ACIM funds with low or no transaction fees. *Id.* ¶ 99. However, Plaintiffs do not, and cannot, make any well-pleaded allegations that American Century contracted with Schwab for this reason, and concede that they lack knowledge of "Defendants' processes for selecting . . . the Plan's recordkeeper". *Id.* ¶ 120. They fail entirely to allege any temporal link between the selection of Schwab as recordkeeper and the unrelated decision by Schwab to include American Century funds (along with numerous other fund complexes) on its menu. As such, Plaintiffs' recordkeeping allegations do not raise an inference of an improper fiduciary process.

### 4. Purported Delay in Moving to Lower-Cost Share Classes

Plaintiffs also point to Defendants' alleged one-year delay in transferring certain Plan investments into newly-available, lower cost share classes. Compl. ¶¶ 80-85. This, too, fails.

A decision to not move to a lower-cost share class immediately when the Plan was otherwise switching recordkeepers (*see id.* ¶¶ 82, 97) does not suggest a breach of any duty to

---

[37] *See* Dawn Kopecki, Christopher Condon, and Andrew Harris, *JPMorgan Loses $373 Million Arbitration to American Century* (Mar. 22, 2012), *available at* http://www.bloomberg.com/news/articles/2012-03-22/jpmorgan-told-to-pay-373-million-in-american-century-funds-case (cited at Compl. ¶ 95 n.13).

monitor investments. Plaintiffs themselves contemplate that some time period is appropriate before switching share classes, alleging that $14 million worth of assets were moved into the One Choice 2035 Fund's R6 share class in the six month period following the date the cheaper share class was available. *Id.* ¶ 85. But their inference that six months is the ***only*** permissible time-frame to effect such a move is contradicted by the public filings of the One Choice 2035 Fund, which demonstrate that, while approximately $14 million was moved into the R6 class from July 2013 to January 2014, $80 million was moved from July 2014 to July 2015; the exact same time period (one year to eighteen months) that Defendants chose.[38]

Indeed, the analysis of whether to offer a lower-cost share class is complicated. Although "some share classes are more expensive than others, [] the cheapest option may not inevitably be the best option," particularly given the use of revenue sharing to pay other plan costs, such as recordkeeping costs. *Leimkuehler*, 713 F.3d at 912 (rejecting claim of imprudence based on failure to offer a lower-cost share class); *White*, 2016 WL 4502808, at *10-11 (same). For this reason, the DOL counsels that share-class selection should be considered as part of a plan's ***total costs***. *See* DOL Advisory Op. 2013-03A, 2013 WL 3546834, at *3 ("plan fiduciaries must assure that the compensation the plan pays . . . for services is reasonable, taking into account the services provided to the plan ***as well as all fees or compensation received by [the service provider] in connection with the investment of plan assets, including any revenue sharing***" (emphasis added)). Accordingly, Plaintiffs have failed to raise an inference that Defendants violated any duties in not immediately moving to lower-cost share classes.

---

[38] Compl. ¶ 81 & n.12; *compare* January 31, 2014 One Choice 2035 Fund Semiannual Report at ACI-MTD2-0217, Rosenberg Decl. Ex. 12 *with* July 31, 2015 One Choice 2035 Fund Annual Return at ACI-MTD2-0227, Rosenberg Decl. Ex. 13. However, this fund may be irrelevant to the Plan, because the Plan instead switched to offering a collective trust for that target date strategy. *See* 2014 Form 5500 at ACI-MTD2-0163, Rosenberg Decl. Ex. 4; Compl. ¶ 101 n.16.

### 5.    Offering Money Market Funds and Not Stable Value Funds

Plaintiffs also allege that the Court should infer a fiduciary breach because Defendants offered two money market funds as investment options rather than a stable value fund.  Compl. ¶¶ 104-12.  However, "nothing [in ERISA] requires plan fiduciaries to include any particular mix of investment vehicles in their plan."  *Hecker*, 556 F.3d at 586.  Because money market funds have certain advantages as compared to stable value funds, these allegations do not permit any inference of an imprudent process.

First, while stable value funds have outperformed the Plan's money market funds since 2010, there is no guarantee that this will always be so.[39]  Second, the somewhat higher performance generally achieved by stable value funds is accompanied by the assumption of greater risk.  The DOL has identified that there are "important differences between money market and stable value funds beyond any difference in average returns."[40]  For example, "stable value products may expose investors to the credit risk of the fund vendor in ways that money market funds do not."  *Id.*  Stable value fund managers may also impose transfer restrictions.[41]  Indeed, far from stating that offering money market funds is a *per se* violation of ERISA's

---

[39] Indeed, in 2007 the Capital Preservation Fund had a return of 4.38% and the Premium Money Market Fund returned 5.04%.  Aug. 1, 2008 Capital Preservation Fund Prospectus at ACI-MTD2-0232, Rosenberg Decl. Ex. 14; Aug. 1, 2008 Premium Money Market Fund Prospectus at ACI-MTD2-0238, Rosenberg Decl. Ex. 15.  The Premium Money Market Fund is now known as the U.S. Government Money Market Fund, but Defendants refer to it herein as the Premium Money Market Fund for ease of reference.  *See* Mar. 31, 2016 U.S. Government Money Market Fund Annual Report at ACI-MTD2-0244, Rosenberg Decl. Ex. 16.

[40] Default Investment Alternatives Under Proposed Directed Individual Account Plans, 72 Fed. Reg. 60,452, 60,473 n.35 (Oct. 24, 2007).

[41] U.S. Government Accountability Office, 401(k) Plans: Certain Investment Options and Practices that May Restrict Withdrawals Not Widely Understood at 25-26 (Mar. 2011), www.gao.gov/new.items/d11291.pdf (last visited Sept. 28, 2016).

fiduciary duties, the DOL explains that money market funds "can, and in many instances will, play an important role as a component of a diversified portfolio."[42]

Plaintiffs themselves even recognize that stable value funds have "pros" as well as "cons" as compared to money market funds. Compl. ¶ 109. Although Plaintiffs suggest that Defendants failed to consider either the pros or the cons, this allegation is contradicted by their allegations that they have no "knowledge of the specifics of Defendants' decision-making processes with respect to the Plan." *Id.* ¶ 120. Accordingly, their challenge to the money market funds does not raise any inference of an imprudent process. In dismissing an identical claim, the United States District Court for the Northern District of California recently explained that offering a money market fund rather than a stable value fund fails to give rise to an inference of a breach because fiduciaries may offer "a money market fund as one of an array of mainstream investment options along the risk/reward spectrum." *White*, 2016 WL 4502808, at *7-8.

### 6. Allegedly Under-Performing Funds

Finally, Plaintiffs seek an inference of an imprudent process from Defendants' selection and retention of two allegedly "poorly performing" actively-managed funds. Compl. ¶¶ 7, 113-19. The Eighth Circuit has rejected such arguments, which are based on "hindsight" and focus on the "investment options' subsequent performance" and not on the process employed by the Plan fiduciaries. *See, e.g.*, *Tussey*, 746 F.3d at 338 (vacating judgment). In affirming dismissal of such claims, the Second Circuit explained that it is not enough to allege "that better investment opportunities were available"; a plaintiff cannot "rely on the vantage point of hindsight." *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (citation omitted).

Not only do allegations of allegedly poor performance fail to state a claim generally, but

---

[42] 72 Fed. Reg. at 60,463.

the allegations here are uniquely deficient.  In a plan with approximately sixty core investment options offered since 2010,[43] Plaintiffs' allegations of poor performance focus solely on the investment performance of only two specific funds.  Compl. ¶¶ 113-19.[44]  Plaintiffs allege that the International Bond Fund and Vista Fund each underperformed its benchmark, by approximately 2.3% and 0.75% respectively, over a ten-year period, even though each fund had positive performance (*i.e.*, increased shareholder value) over those same periods.  Compl. ¶¶ 113, 118.  Allegations of a modest failure to achieve a performance benchmark—particularly as to two of sixty funds—do not permit a reasonable inference of an imprudent investment process.  *See Leber v. Citigroup 401(k) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 14 (S.D.N.Y. 2015) ("Plaintiffs' allegations of the Funds' alleged underperformance in average annual returns as compared to certain benchmark indices . . . do not raise a plausible inference that a prudent fiduciary would have found those Funds to be 'so plainly risky' as to render the investments in them imprudent." (citation omitted)).[45]

* * *

Given that Plaintiffs have alleged no facts about the fiduciary process that raise an inference of a breach of duty, Counts I and II should be dismissed.[46]

---

[43] *See* 2015 Form 5500 at ACI-MTD2-0151-53, Rosenberg Decl. Ex. 3; 2014 Form 5500 at ACI-MTD2-0162-64, Rosenberg Decl. Ex. 4; 2013 Form 5500 at ACI-MTD2-0170-72, Rosenberg Decl. Ex. 5; 2012 Form 5500 at ACI-MTD2-0179-81, Rosenberg Decl. Ex. 6; 2011 Form 5500 at ACI-MTD2-0186-88, Rosenberg Decl. Ex. 7; 2010 Form 5500 at ACI-MTD2-0193-95, Rosenberg Decl. Ex. 8.

[44] Any investor would be extremely fortunate to have 58 out of 60 investments, over 96%, perform well.

[45] *See also Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, No. 11 Civ. 5127, 2012 WL 3191961, at *2, 5 (S.D.N.Y. Aug. 7, 2012) (dismissing similar complaint that alleged only modest underperformance), *aff'd*, 513 F. App'x 78 (2d Cir. 2013).

[46] Plaintiffs' failure-to-monitor claim (Count II) is wholly derivative of Count I and therefore fails because Count I fails.  *See Crocker*, 782 F. Supp. 2d at 788 (dismissing claim alleging a failure to monitor fiduciaries for failure to plead an underlying breach of duty).

### C. Plaintiffs Fail to State any Prohibited Transaction Claim

Counts III and IV, asserting prohibited transaction claims, should also be dismissed.

As noted above, ERISA exempts from its prohibited transaction rules the very conduct that Plaintiffs' challenge—investments in proprietary funds. *See, e.g.*, ERISA § 408(b)(8) (bank and insurance company pooled funds); *supra* p. 11. PTE 77-3, promulgated by the DOL, permits investment in affiliated mutual funds.[47] Section 408(b)(8) applies so long as, among other things, the affiliate "receives not more than reasonable compensation." PTE 77-3 similarly requires dealings between the plan and the mutual fund to be "on a basis no less favorable to the plan than such dealings are with other shareholders of the investment company."[48]

Where it is clear from the face of a complaint that the use of proprietary funds is consistent with the exemptions, courts have sensibly dismissed prohibited transaction claims at the pleading stage. *See, e.g.*, *Leber v. Citigroup, Inc.*, No. 07 Civ 9329, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (dismissing claim because, "even in the light most favorable to plaintiffs, the complaint asserts nothing more than that defendants purchased shares in an affiliated mutual fund, a transaction to which 'the restrictions of section [] 406 . . . shall not apply'").[49] This is especially true where the complaint anticipates the defense "and thus put[s] it in play." *See Hecker*, 556 F.3d at 581.[50]

---

[47] 42 Fed. Reg. at 18,734-35.

[48] 42 Fed. Reg. at 18,735.

[49] *See also Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510-11 (E.D. Pa. 2001) (dismissing claim because "[p]laintiffs do not allege that the fees paid by the Plans are not in compliance with the requirements of PTE 77-3, or that the Plans have had dealings with the . . . [f]unds on terms that are less favorable than are offered to other shareholders").

[50] *Braden* declined to dismiss based on the potential availability of exemptions, 588 F.3d at 601, but there the plaintiff had not put the issue into dispute in his complaint. *See generally* Compl., No. 08-cv-03109 (W.D. Mo. Mar. 27, 2008).

Here, the Complaint puts the exemptions into play by alleging that "ACIM dealt with Plan participants on a basis less favorable than its dealings with other shareholders."  Compl. ¶ 84.  Although the Complaint anticipates the defense—thereby allowing it to be decided on this motion—the allegation is insufficient to rebut the defense because it is based solely on Plaintiffs' irrelevant argument that Plan fiduciaries should have immediately transferred investments into R6 shares.[51]  The relevant exemption asks instead whether plan participants were dealt with as "favorabl[y]" as "other shareholders" in the same investment—not whether different share classes of the affiliated mutual funds were available.[52]

Because the Complaint pleads facts relevant to the exemptions, but does not plead any facts that would be inconsistent with their availability, Counts III and IV should be dismissed.

### D.    Plaintiffs Fail to State a Claim for Equitable Restitution

Count V seeks equitable restitution under ERISA § 502(a)(3) against ACIM, ACS, and ACC in their capacity as employers who sponsor the Plan.  This count fails because (i) Plaintiffs are not eligible for equitable restitution, (ii) Plaintiffs make only conclusory allegations that ACIM, ACS and ACC have received "ill-gotten proceeds" (Compl. ¶ 159), and (iii) on these facts, Plaintiffs are not entitled to recover these mutual fund fees under ERISA.

*First*, "the term 'equitable relief' in § 502(a)(3) must refer to those categories of relief that were typically available in equity."  *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (citation omitted).  Remedies such as constructive trusts are available in equity only "where money or property identified as belonging in good conscience to the plaintiff c[an] clearly be traced to particular funds or property in the defendant's possession."  *Id.* at 213.

---

[51] Since Mr. Borchering left the Plan prior to the 2013 introduction of R6 shares, he cannot state this claim because he could not have been harmed by the lack of their use.  *See* Compl. ¶ 15.

[52] *See generally* 42 Fed. Reg. at 18,734-35.

Otherwise, they constitute requests for restitution at law or money damages that are not permitted under § 502(a)(3). *Id.* at 209-10. Accordingly, in this circuit, claims for disgorgement of excessive fees are improper where the fees cannot be traced to particular funds or property in the defendants' possession. *See, e.g.*, *Pichoff v. QHG of Springdale, Inc.*, 556 F.3d 728, 731-32 (8th Cir. 2009); *Calhoon v. Trans World Airlines, Inc.*, 400 F.3d 593, 598 (8th Cir. 2005).

Plaintiffs' claims fail for this reason alone. They allege only in conclusory fashion that the funds they seek to be disgorged "are traceable to specific transactions that have taken place on specific dates." Compl. ¶ 161. Plaintiffs have not alleged, nor could they, that (i) the funds' advisers have segregated the fees received from such investments from any other fees or revenue they receive, (ii) or that those specific fees are ***currently held*** in traceable or segregated accounts. Therefore, this claim fails. *See Calhoon*, 400 F.3d 598.

***Second***, Count V also fails because there are no well-pleaded allegations that the fees received from the mutual funds were excessive in relation to the fund services rendered, or that the corporate Defendants had the requisite knowledge of excessiveness. A plaintiff may recover from non-fiduciaries under ERISA § 502(a)(3) ***only*** where the non-fiduciaries "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris Trust & Sav. Bank v. Salomon Smith Barney*, 530 U.S. 238, 251 (2000).

Here, Plaintiffs allegations are conclusory: "[t]he American Century entities knew that the proprietary investments in the Plan were excessively costly and performed poorly in comparison to other investment alternatives." Compl. ¶ 163. *See also id.* ¶ 25 ("ACS . . . receives unreasonably high compensation" as the transfer agent); *id.* ¶ 37 (ACIM collects "unreasonably high" investment management fees). Given that the fees fall within the range that other courts have held creates no inference of a breach of duty, *supra* p. 14, these conclusory

allegations of excessiveness are implausible.  Further, in light of Plaintiffs' own allegations that only two of approximately sixty funds underperformed, and the lack of any allegation about the funds' services, there is no pleaded basis to infer any knowledge of poor performance.

*Third*, Plaintiffs cannot recover fees paid by mutual funds under ERISA here.  Because "mutual funds are regulated by the Investment Company Act of 1940 . . . it is not considered necessary to apply [ERISA's] fiduciary rules to mutual funds."  *IATSE Local 33 Section 401(k) Plan Bd. of Trs. v. Bullock*, No. 08-3949, 2008 WL 4838490, at *6 (C.D. Cal. Nov. 5, 2008) (dismissing ERISA claims) (quoting legislative history).  Holding otherwise "would undermine Congress's intent that ERISA not normally impose additional regulations on mutual funds."  *Id.* Plaintiffs' claim for equitable restitution of mutual fund fees should therefore be dismissed.[53]

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated:  October 4, 2016                          Respectfully submitted,


                                                 **BRYAN CAVE LLP**


                                                 By:  */s/ W. Perry Brandt*
                                                       W. Perry Brandt, MO # 28292
                                                       1200 Main Street, Suite 3500
                                                       Kansas City, MO 64105
                                                       (816) 374-3200
                                                       (816) 374-3300 (Fax)
                                                       perry.brandt@bryancave.com

                                                 **GOODWIN PROCTER LLP**
                                                 James O. Fleckner (*admitted pro hac*)
                                                 Alison V. Douglass (*admitted pro hac*)
                                                 Dave Rosenberg (*admitted pro hac*)
                                                 100 Northern Avenue

---

[53] Count V should also be dismissed as to ACC and the Committee and its members because it contains no allegations that they ever received any challenged fees.  *See* Compl. ¶¶ 26-36, 39.

Boston, MA  02210
(617) 570-1000
(617) 523-1231 (Fax)
jfleckner@goodwinlaw.com
adouglass@goodwinlaw.com
drosenberg@goodwinlaw.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 4th day of October, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following counsel of record:

Michael F. Brady
Mark Kistler
Brady & Associates
10985 Cody Street, Suite 135
Overland Park, Kansas 66210
Phone: (913) 696-0925
Fax: (913) 696-0468
Email: brady@mbradylaw.com

Kai H. Richter
Carl F. Engstrom
Jacob T. Schutz
Nichols Kaster, PLLP
4600 IDS Center, 80 South 8th Street
Minneapolis, Minnesota 55402
Phone: (612) 256-3200
Fax: (612) 338-4878
Email: krichter@nka.com

Attorneys for Plaintiff

*s/ W. Perry Brandt*
W. Perry Brandt