IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| STEVE WILDMAN and | ) | |
| JON BORCHERDING, | ) | |
| individually and as representatives of a | ) | |
| class of similarly situated persons, and | ) | |
| ON BEHALF OF THE AMERICAN | ) | |
| CENTURY RETIREMENT PLAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-00737-DGK |
| | ) | |
| AMERICAN CENTURY SERVICES, LLC, | ) | |
| THE AMERICAN CENTURY RETIREMENT | ) | |
| PLAN RETIREMENT COMMITTEE, | ) | |
| AMERICAN CENTURY INVESTMENT | ) | |
| MANAGEMENT, INC., AMERICAN | ) | |
| CENTURY COMPANIES, INC., | ) | |
| CHRISTOPHER BOUFFARD, BRADLEY C. | ) | |
| CLOVERDYKE, JOHN A. LEIS, TINA S. | ) | |
| USSERY-FRANKLIN, MARGARET E. | ) | |
| VAN WAGONER, GUDRUN S. NEUMANN, | ) | |
| JULIE A. SMITH, MARGIE A. MORRISON, | ) | |
| CHAT COWHERD, DIANE GALLAGHER, | ) | |
| AND JOHN DOES 1-20, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case involves claims for breach of fiduciary duty brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiffs Steve Wildman ("Wildman") and Jon Borcherding ("Borcherding"), participants in the American Century Retirement Plan (the "Plan") established by American Century Investment Management, Inc. ("ACIM"), bring this suit, on their own behalf, and on behalf of a proposed class of participants in the Plan, against Defendants American Century Services, LLC ("ACS"),

the American Century Retirement Plan Retirement Committee (the "Committee"), ACIM, American Century Companies, Inc. ("American Century"), and past and present members of the Committee,[1] seeking damages and declaratory and injunctive relief. Plaintiffs claim Defendants breached their fiduciary duties and engaged in prohibited transactions in violation of ERISA. Defendants argue Plaintiffs are contractually barred from bringing this action because they signed a waiver releasing all claims against Defendants.

Now before the Court is Defendants' motion for summary judgment (Doc. 19). Finding Defendants have not shown they are entitled to judgment as a matter of law, summary judgment is GRANTED in part and DENIED in part.

## Undisputed Material Facts[2]

### A. Plaintiffs

Wildman is a former employee of American Century. He has a Bachelor of Science degree and a Master of Business Administration degree. The last position he held at American Century was information technology specialist. Wildman began participating in the Plan in 2005 and continues to participate. In 2008, Wildman was laid off and received a severance package that included a $17,300 payment, a prorated bonus, company-paid Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") benefits, and career transition services. In return, he signed an agreement waiving all claims against American Century. American Century gave Wildman forty-five (45) days to consider the terms of the agreement.

---

[1] The members named are: Christopher Bouffard, Bradley C. Cloverdyke, John A. Leis, Tina S. Ussery-Franklin, Margaret E. Van Wagoner, Gudrun S. Neumann, Julie A. Smith, Margie A. Morrison, Chat Cowherd, Diane Gallagher, and unknown fiduciary defendants 1-10 (collectively "Committee Members").

[2] The Court excluded asserted facts that were immaterial to the resolution of the pending motion, asserted facts that were not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact.

Borcherding is also a former employee of American Century. He has a Bachelor of Arts degree and a graduate degree in public administration. The last position he held at American Century was account services representative. Borcherding participated in the Plan from 1996 to 2012. In 2012, Borcherding was laid off and received a severance package that included a $13,824 payment, company-paid COBRA benefits, and career transition services. In return, he signed an agreement waiving all claims against American Century. American Century gave Borcherding twenty-one (21) days to consider the terms of the agreement.

**B. Severance Agreements**

Under the severance agreements ("Agreements"), Wildman and Borcherding agreed to release American Century and its subsidiaries from any claim of any kind that arose on or before the date of the agreement. The agreements are nearly identical. The relevant portion states:

> In consideration of the receipt of the Severance Benefits . . . I do hereby **release and forever waive all rights I may have to assert claims or bring lawsuits against the Company** and each of their respective officers, directors, and employees including, but not limited to:
> 
> all claims relating to my employment, the termination of my employment, salary, bonus or other compensation, sick leave, vacation pay, personal leave time or other benefits, including those claims based on a breach of an oral or written employment contract, whether such contract was express or implied;
> 
> all rights and claims that may be asserted under any city ordinance or state or federal law, including without limitation, those relating to employment discrimination or retaliation including, but not limited to, those claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, the Americans With Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act of 1974, as amended, the Consolidated Omnibus Budget Reconciliation Act, 42 U.S.C. §§ 1981, 1983 and 1985, the

3

> Missouri Human Rights Act[3], the Missouri Service Letter Statute, Workers' Compensation Laws, and other similar federal, state, and local laws, ordinances or executive orders for the protection of employees against discrimination; and
>
> . . .
>
> 1. I have carefully read this Agreement and that its contents have been fully explained to me;
>
> . . .
>
> 4. I was advised by this Agreement of my right to consult advisors, including attorneys, about the contents of this Agreement;
> 5. After due consideration and consultation, I signed this Agreement voluntarily without duress;
> 6. By signing this Agreement I understand that **I do not waive any rights or claims that may arise after the date the Agreement** is executed[.]

Def.'s Br. Ex. 1 at 5-7, Ex. 3 at 24-26 (Doc 20-1) (emphasis added).

**C. The Plan**

The Plan is a defined contribution, "401k"[4] plan that allows participants to contribute a percentage of their pre-tax earnings and invest their contributions in one or more investment options. Since 2010, the Plan's designated investment options are a limited selection of American Century mutual funds, American Century collective investment trusts, and American Century Companies Inc. Class C common stock.

Two Defendants have primary responsibility for administering the Plan, ACS, and the Committee. ACS administers the Plan by controlling and managing the operations of the Plan. The Committee administers the Plan by selecting and monitoring the investment options in the Plan.

---

[3] Borcherding's Agreement also bars claims under the City of Kansas City, Missouri's, equivalent of the Missouri Human Rights Act.

[4] The Plan is a "employee pension benefit plan" and a "defined contribution plan" within the meaning of 29 U.S.C. § 1002(2)(A), (34).

## Summary Judgment Standard

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). A party who moves for summary judgment bears the burden of showing that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has satisfied his or her initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When considering a motion for summary judgment, a court must scrutinize the evidence in the light most favorable to the nonmoving party. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 585 (2009)).

## Discussion

The Amended Complaint alleges five counts, all ERISA violations. Count I asserts ACS, ACIM, the Committee, and the Committee Members (collectively "Fiduciary Defendants"), breached their duty of loyalty and prudence in violation of 29 U.S.C. § 1104(a)(1)(A)-(B). Count II alleges ACS breached its duty to monitor ACIM, the Committee, and Committee members who allegedly caused losses to the Plan. Counts III and IV allege Defendants American Century, ACIM, and ACS engaged in prohibited transactions in violation of 29 U.S.C.

5

§ 1106(a)(1) and (b). Count V is a claim for other equitable relief based on ill-gotten proceeds, 29 U.S.C. § 1132(a)(3).

Defendants argue they are entitled to summary judgment because Plaintiffs released their right to assert claims against American Century. Defendants bear the burden of establishing the affirmative defense that Plaintiffs waived their ERISA claims. *See Day v. Toman*, 266 F.3d 831, 836 (8th Cir. 2001) (finding release is an affirmative defense); *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 720 (E.D. Mo. 2015) ("a defendant therefore bears the burden of proof with respect to its affirmative defenses"). To prevail, Defendants must show: (1) the waivers are valid; and (2) Plaintiffs' claims are within the scope of the waivers.

## I. The waiver of claims in the severance agreements is generally valid.

Employees may release ERISA claims against their employers in exchange for severance benefits. *Leavitt v. Nw. Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir. 1990). The release must be knowing and voluntary. *Id.* To determine whether a release is knowing and voluntary, courts consider the totality of the circumstances by evaluating nine factors: (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the agreement; (3) the clarity of the release language; (4) the time the employee had to consider the release before signing it; (5) whether the employee read the release and considered its terms; (6) whether the employee knew his rights under the agreement; (7) whether the employee was given an opportunity to consult with an attorney before signing the release; (8) whether the employee received adequate consideration for the release; and (9) whether the release was induced by the employer's improper conduct. *Id.* A release may be valid even if only some of the *Leavitt* factors are satisfied. *Groska v. N. States Power Co. Pension Plan*, No. 05-114 (JNE/FLN), 2007 WL 2791119, at *8 (D. Minn. Sept. 24, 2007).

In this case, the Court finds the factors weigh in favor of finding the waiver is valid and enforceable against both Wildman and Borcherding. Considering the first factor, both Wildman and Borcherding are highly educated, each with two college degrees. *See Werb v. ReliaStar Life Ins. Co.*, No. 08-CV-5126 PJS/JJG, 2010 WL 3269974, at *12-13 (D. Minn. Aug. 17, 2010) (finding plaintiff's bachelor's degree and a master's degree in business weighed in favor of finding release valid). Additionally, Wildman has experience in business given he has a master's degree in business administration. *See id.*; *Groska*, 2007 WL 2791119, at *8 (finding plaintiff had adequate experience in business given she had completed MBA coursework). The second factor weighs in favor of Plaintiffs because neither had input in negotiating the terms of their Agreement. The third factor weighs in favor of Defendants because the language of the release is understandable; it unambiguously releases American Century of all liability for claims arising prior to the execution of the agreement. Turning to the fourth factor, both Plaintiffs had ample time to consider the release; Wildman received forty-five (45) days and Borcherding received twenty-one (21) days. *See Groska*, 2007 WL 2791119, at *8 (finding fifteen (15) days to consider the release adequate); *Mange v. Petrolite Corp.*, 960 F. Supp. 206, 209-10 (E.D. Mo. 1997), *aff'd*, 135 F.3d 570 (8th Cir. 1998) (finding six (6) weeks to consider release adequate). The fifth and sixth factors also weigh in favor of Defendants. The Agreements state the signor has "carefully read this Agreement" and that it was "fully explained," inferring the Plaintiffs each read and considered the terms of the release and knew their rights under the Agreement. The seventh factor weighs in favor of Defendants. The Agreement states the signor was advised "to consult advisors, including attorneys, about the contents of this Agreement." Additionally, as previously stated, each Plaintiff received several weeks to consider their Agreement providing time to consult with advisors if the Plaintiffs had desired. The eighth factor weighs in favor of

Defendants. Both Plaintiffs' severance benefit packages provided adequate consideration for the agreement. *See Werb*, 2010 WL 3269974, at *12-13 (finding $65,000 in consideration was adequate); *Groska*, 2007 WL 2791119, at *8 (finding ten month severance benefit package was adequate consideration). The last factor is neutral, there are no facts suggesting either Plaintiff was induced to sign the agreement by any improper conduct from American Century.

Thus, under the totality of the circumstances, the Court holds both Wildman and Borcherding entered into their Agreements knowingly and voluntarily.

**II. Plaintiffs' claims arose after they executed the Agreements.**

The Agreements expressly state Plaintiffs "release and forever waive all rights . . . to assert claims or bring lawsuits against [American Century]." The Agreements then carve out an exception for "claims that may arise after the date the Agreement is executed." The Court finds Plaintiffs' claims arose after executing their Agreements and, therefore, are not within the scope of the release.

The duties of a fiduciary are ongoing, and a cause of action arises under ERISA each time the fiduciary breaches its duty. *See Tibble v. Edison Intern.*, 135 S. Ct. 1823, 1828-29 (2015) (holding a fiduciary has a continuing duty to monitor investments and remove imprudent ones). Each failure to exercise the duties of loyalty and prudence is a new breach and consequently, a new claim. *Boeckman, v. A.G. Edwards, Inc.*, 461 F. Supp. 2d 801, 814-15 (S.D. Ill. 2006) ("In light of the continuing duty of prudence imposed on plan fiduciaries by ERISA, each failure to exercise prudence constitutes a new breach of the duty, that is to say, a new claim. Thus, allegations that, following the execution of the release, [defendant] continued to breach its fiduciary duty by continuing to pay excessive fees to mutual funds represent new, prospective claims not in existence when the release was executed."). *See also Moore v. Comcast Corp.*, 268

F.R.D. 530, 534-37 (E.D. Pa. 2010) (finding "'ERISA imposes a continuing duty to review and liquidate improvident investments'" and that the breach of that duty creates a "continuing wrong" that is "continually arising anew") (quoting *Morrissey v. Curran*, 567 F.2d 546, 549 (2d Cir. 1977)).

Likewise, each time a prohibited transaction occurs, a new claim arises. *See NYSA–ILA Med. & Clinical Servs. Fund v. Catucci*, 60 F. Supp. 2d 194, 199–200 (S.D.N.Y. 1999) (each improper payment of ERISA plan assets to a third party was a distinct action that supported a new breach of fiduciary duty claim); *Dole v. Formica*, No. C87–2955, 1991 WL 317040, at *8 (N.D. Ohio Sept. 30, 1991) (finding recurring breaches, not just one initial breach with continuing effects, where a plan paid excessive administrative fees for years and holding each time a fiduciary made an improper payment with plan assets, "the [plan] [was] harmed and a new cause of action arose."). *See also Russell v. Harman Int'l Indus., Inc.*, 945 F. Supp. 2d 68 (D.D.C. 2013) (a claim for breach of the duty of prudence "is available when the fiduciary makes the imprudent investment.").

Under the "continuing duty" standard, a new claim arose each time Defendants breached their duty to the Plan. Plaintiffs argue since June 30, 2010, Defendants have committed ongoing breaches of their fiduciary duty by using a disloyal and imprudent process to manage the Plan. For example, Plaintiffs claim less expensive R6 shares became available in July 2013, but that the fiduciaries did not move Plan assets to this share class until August 2014, causing a loss to the Plan each day the assets remained in the more expense share class. Additionally, Plaintiffs claim the fiduciaries continue to retain the International Bond fund even though it underperforms against its benchmark. Plaintiffs also claim Defendants failed to investigate the recordkeeping

costs paid to JPMorgan RPS, recordkeeper until 2013, and continues to fail to investigate the costs paid to Schwab RS, the current recordkeeper.

Defendants argue Plaintiffs' claims arose when the claims "were available as a matter of law" which, according to Defendants, is when the challenged activity first occurred, citing *Russell v. Harman Int'l Indus., Inc.* Using this standard, Defendants claim Plaintiffs' claims arose when Defendants made use of American Century funds within the Plan, which was prior to the execution of Plaintiffs' Agreements. Defendants also focus on "whether plaintiff had sufficient constructive knowledge" of the potential claim when they signed their Agreements, citing to *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116-17 (7th Cir. 1990) and *Lund v. Citizens Financial Group, Inc.*, No. CV 97-183-M, 1999 WL 814341, *15 (D.N.H. Sept. 30, 1999). The cases cited by Defendants are factually distinct from this case in that in each of those cases the plaintiffs alleged a particular one-time action by the defendant caused the breach of fiduciary duty. In *Russell*, the defendant made false and misleading statements. In *Fair* and *Lund*, the defendant miscalculated retirement benefits. But, here, the Plaintiffs allege ongoing breaches of duty in the continued management of the Plan's investment lineup.

Each alleged breach of the duty of loyalty or prudence results in a new claim. Likewise, each alleged prohibited transaction results in a new claim. Plaintiffs' Amended Complaint encompasses all of those claims from June 30, 2010, to present. Wildman signed his agreement on June 9, 2008, so all claims presented arose after his Agreement became effective. Borcherding signed his agreement on July 19, 2012, so his claims are limited to those occurring after that date.[5] Therefore, the motion is DENIED as to Wildman's claims. The motion is

---

[5] The Court makes no determination of whether this limitation affects Borcherding's ability to serve as a class representative.

DENIED as to Borcherding's claims that arose after July 19, 2012, and GRANTED as to Borcherding's claims that arose on or before July 19, 2012.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (Doc. 19) is GRANTED in part and DENIED in part.

**IT IS SO ORDERED.**

Date: February 27, 2017 /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT