# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

STEVE WILDMAN and                                 )
JON BORCHERDING,                                  )
individually and as representatives of a          )
class of similarly situated persons, and          )
ON BEHALF OF THE AMERICAN                         )
CENTURY RETIREMENT PLAN,                          )
                                                  )
     Plaintiffs,               )
                                                  )
     v.                        )     No. 4:16-CV-00737-DGK
                                                  )
AMERICAN CENTURY SERVICES, LLC,                   )
et al.,                                           )
                                                  )
     Defendants.               )

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

     This case involves claims for breach of fiduciary duty brought pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Plaintiffs Steve

Wildman ("Wildman") and Jon Borcherding ("Borcherding"), participants in the American

Century Retirement Plan (the "Plan") established by American Century Investment

Management, Inc. ("ACIM"), bring this suit, on their own behalf and on behalf of a proposed

class of participants in the Plan against Defendants American Century Services, LLC ("ACS"),

the American Century Retirement Plan Retirement Committee (the "Committee"), ACIM,

American Century Companies, Inc. ("American Century"), and past and present members of the

Committee,[1] seeking damages and declaratory and injunctive relief. Plaintiffs claim Defendants

breached their fiduciary duties and engaged in prohibited transactions in violation of ERISA.

---

[1] The members named are: Christopher Bouffard, Bradley C. Cloverdyke, John A. Leis, Tina S. Ussery-Franklin, Margaret E. Van Wagoner, Gudrun S. Neumann, Julie A. Smith, Margie A. Morrison, Chat Cowherd, Diane Gallagher, and unknown fiduciary defendants 1-10 (collectively "Committee Members").

Now before the Court is Defendants' motion to dismiss (Doc. 34). Defendants argue all of Plaintiffs' claims are either barred by the three-year statute of limitations or fail to state a claim for relief.[2] For the following reasons, the motion is DENIED.

## Background

The amended complaint (Doc. 28) alleges the following:

The Plan covers eligible employees and former employees of American Century and American Century affiliates, ACS and ACIM. Plaintiffs Wildman and Borcherding have participated in the plan since 2005 and 1996, respectively. ACS is the "plan sponsor." ACS together with the Committee are Plan fiduciaries and "administrators" of the Plan. ACIM is an investment advisor for the investments within the Plan. American Century is a plan employer and owns ACS and ACIM.

The Plan is a defined contribution, "401k"[3] plan that allows participants to contribute a percentage of their pre-tax earnings and invest those contributions by choosing from "a lineup of options offered by the Plan." Am. Compl. ¶ 21. At retirement, a participant's benefits are generally "limited to the value of their own investment accounts, which is determined by the market performance of the [] contributions, less expenses." *Id.* ¶ 3. Therefore, to maximize benefits for the participants, fiduciaries must consider the investment options offered in the lineup and the fees associated with each of the investment options.

Plaintiffs allege since 2010 the Plan's investment options were "a limited selection of American Century mutual funds, American Century collective investment trusts, and shares of American Century Companies, Inc. Class C common stock." *Id.* ¶ 22. Plaintiffs estimate the

---

[2] Defendants' motion refers to the complaint rather than the amended complaint. Where necessary, the Court construes all references to the complaint as references to the amended complaint.

[3] The Plan is a "employee pension benefit plan" and a "defined contribution plan" within the meaning of 29 U.S.C. §§ 1002(2)(A), (34).

Plan costs were 0.73% in 2010 and 0.65% in 2013. Plaintiffs allege the total plan cost is "extremely high for a defined-contribution plan with a similar amount of assets." *Id.* ¶ 75. Comparatively, the average plan cost for similar-sized plans was .53% in 2009 (the only data available comparable to 2010), and .44% in 2013.

Plaintiffs allege ACS, ACIM, the Committee, and the Committee members (collectively "Fiduciary Defendants"), improperly managed Plan assets for their own benefit. Specifically, the Fiduciary Defendants breached their fiduciary duties by: (a) using a disloyal and imprudent process to manage the Plan; (b) retaining high-cost proprietary funds in their own self-interest and to the detriment to Plan participants; (c) failing to procure the least expensive available share class for numerous funds; (d) causing the Plan to pay excessive recordkeeping costs; and (e) failing to adequately monitor investments and remove poor performing investments.

Plaintiffs also allege ACS failed to monitor the performance of the Committee and ACIM including monitoring the process used to select, evaluate, and retain the Plan's investment lineup.

Plaintiffs further allege Defendants caused the Plan to engage in prohibited transactions with ACS and ACIM through a revenue sharing agreement between ACS, ACIM, and the Plan. According to the amended complaint, the revenue sharing agreement allowed ACIM to deduct fees from Plan assets for services it provided and paid a portion of those fees to ACS. Plaintiffs allege these payments were for more than reasonable compensation and resulted in significant losses to the Plan participants. Plaintiffs allege Fiduciary Defendants knowingly caused the Plan to engage in these transactions.

Finally, Plaintiffs allege they did not have knowledge of the material facts to support their claims until "shortly before this suit was filed." *Id.* ¶ 120.

## Standard

A complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To avoid dismissal, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

A court may dismiss a complaint for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In reviewing the complaint, the court assumes the facts alleged are true and draws all reasonable inferences from those facts in the plaintiff's favor. *Monson v. Drug Enf't Admin.*, 589 F.3d 952, 961 (8th Cir. 2009).

## Discussion

On June 30, 2016, Plaintiffs filed this putative class action on behalf of "all participants and beneficiaries of [the Plan] at any time on or after June 30, 2010, excluding Defendants, employees with responsibility for the Plan's investment or administrative functions, and members of the [American Century] Board of Directors." Am. Compl. ¶ 122. Plaintiffs amended their complaint on September 8, 2016. The amended complaint asserts five causes of action under ERISA.

4

Count I asserts Fiduciary Defendants breached their duty of loyalty and prudence in violation of 29 U.S.C. § 1104(a)(1)(A)-(B). Count II alleges ACS breached its duty to monitor ACIM, the Committee, and Committee members who allegedly caused losses to the Plan. Counts III and IV allege American Century, ACIM, and ACS engaged in prohibited transactions in violation of 29 U.S.C. § 1106(a)(1) and (b). Count V is a claim for other equitable relief based on ill-gotten proceeds, in violation of 29 U.S.C. § 1132(a)(3).

Defendants argue the amended complaint should be dismissed in its entirety because: (1) the claims are barred by statute of limitations; and (2) Plaintiffs fail to state a claim for relief.

## I. Plaintiffs' claims are not barred by the three-year statute of limitations.

Defendants first argue Plaintiffs had actual knowledge of the underlying alleged violation through publicly available records more than three years before bringing this suit, therefore, Counts I, III, and IV are barred under 29 U.S.C. § 1113.

"Bar by a statute of limitations is typically an affirmative defense, which the defendant must plead and prove." *Walker v. Barrett*, 650 F.3d 1198, 1203 (8th Cir. 2011). Thus, "the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Id.*

Under ERISA the limitations period for any breach of fiduciary duty claim is:

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

5

29 U.S.C. § 1113; *see also Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 858-59 (8th Cir. 1999) (ERISA contains an express statute of limitations barring fiduciary duty claims after the earlier of 6 years from the breach or 3 years from the date plaintiff acquires actual knowledge of the breach). The shorter, three-year statute of limitations requires "a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists." *Brown*, 190 F.3d at 859 (internal quotation marks omitted). "[I]t is not enough that [the plaintiffs] had notice that something was awry; [the plaintiffs] must have had specific knowledge of the actual breach of duty upon which [they sued]." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001).

As discussed below, Defendants have not shown, from the face of the amended complaint, Plaintiffs had actual knowledge of the material facts underlying the allegations of breach of fiduciary duties and engaging in prohibited transactions more than three years prior to commencing this action.

### A. In the three years prior to this lawsuit, Plaintiffs did not have actual knowledge of the facts underlying the breach of fiduciary duty claim.

To argue the statute of limitations bars Plaintiffs' claims, Defendants point to publicly available documents regarding the Plan and Plaintiffs' own complaint. First, Defendants point to the amended complaint where Plaintiffs state, it is "apparent from the Plan's menu of designated investment alternatives, Defendants' process for managing the Plan was neither prudent nor loyal." Am. Compl. ¶ 72. Defendants also point to the amended complaint to show the Plan has not materially changed in the last three years; only American Century funds have been offered, the costs have not changed, and specific funds have underperformed. Defendants argue because the Plan has not changed in the last three years and it is "apparent" the Plan only includes American Century funds, Plaintiffs had actual knowledge of their claim more than three years ago.

This argument fails because it mischaracterizes Plaintiffs' allegations. Plaintiffs do not complain the mere offering of proprietary funds caused a breach of fiduciary duty, rather, they argue the process to review, retain, and remove funds from the Plan's investment lineup was disloyal and self-serving, and given the fees and performance of the Plan's funds as compared to similarly available funds, the proprietary funds were an imprudent investment.

Next, Defendants argue all Plan participants were provided the legally-required Plan disclosures, which made clear the fees charged and performance of the funds. Since Wildman and Borcherding first participated in the Plan in 2005 and 1996, respectively, they were provided the fee data more than three years prior to bringing this suit.

"To determine when the plaintiffs acquired actual knowledge . . . the court must consider the elements of the allegations of the breach of fiduciary duty alleged in Plaintiffs['] Complaint." *Angell v. John Hancock Life Ins. Co.*, 421 F. Supp. 2d. 1168, 1173 (E.D. Mo. 2006). Some courts have held an ERISA plaintiff has actual knowledge of a plan's fee data that is "clearly disclosed" by plan documents. *Young v. Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008).

To support their allegations that Defendants breached their duties of loyalty and prudence, Plaintiffs compare 2010 and 2013 Plan costs with the average cost of similarly-sized plans in 2009 and 2013. Plaintiffs allege fees within the Plan were 38% more expensive in 2010 and 48% more expensive in 2013 than the average similarly-sized plan.

An element of Plaintiffs' allegation, which is material to Plaintiff's understanding that Defendants violated ERISA, is the fee data of comparable plans. Defendants rely on *Young* to argue Plaintiffs had actual knowledge of the Plan's expenses because they were published in publicly disclosed Plan documents, including IRS filings. District courts have declined to follow

*Young* where plaintiffs allege a deficient selection process or fees that are excessive in comparison to a benchmark. *See, e.g.*, *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 Civ. 9936 (LGS), 2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016); *Leber v. Citigroup 401(k) Plan Investment Committee*, No. 07-Cv-9329 (SHS), 2014 WL 4851816 (S.D.N.Y. Sep. 30, 2014); *Krueger v. Ameriprise Financial, Inc.*, No. 11-cv-02781 (SRN/JSM), 2014 WL 1117018 (D. Minn. Mar. 20, 2014). Here, *Young* does not apply because Plaintiffs complain the Plan's fees are excessive *in comparison to* other available investment options.

Defendants do not assert data of fees for comparable funds was available to Plaintiffs in the three years prior to this suit. Plaintiffs also do not allege knowledge of these salient facts. The amended complaint states Plaintiffs did not have knowledge of the "costs of the Plan's investments *compared to* those in similarly-sized plans" and "*comparisons* of the Plan's overall costs to the costs of other similarly-sized plans." Am. Compl. ¶ 120 (emphasis added). These allegations must be accepted as true on this motion. Therefore, Defendants have not shown it is clear from the face of the amended complaint that Plaintiffs had actual knowledge of the fee data for the comparable alternative funds more than three years before Plaintiffs filed this lawsuit.

Accordingly, Count I is not barred by the statute of limitations.

**B. In the three years prior to this lawsuit, Plaintiffs did not have actual knowledge of the facts underlying the prohibited transactions claims.**

Defendants argue in a footnote of their reply brief that the prohibited transactions claims, Counts III and IV, should also be dismissed because Plaintiffs had knowledge that the Plan's investment lineup included only American Century Funds. Again, Defendants mischaracterize the nature of Plaintiffs' claim.

"In most cases, 'disclosure of a transaction that is not inherently a statutory breach of fiduciary duty . . . cannot communicate the existence of the underlying breach.'" *Brown*, 190

F.3d at 859. "It follows that where the alleged breach stems from a transaction that a plaintiff claims is inherently a statutory breach of fiduciary duty, knowledge of the transaction standing alone may be sufficient to trigger the obligation to file suit." *Caputo*, 267 F.3d at 193 (internal quotation marks omitted); *see also Brown*, 190 F.3d at 859 (finding "knowledge of the transaction would be actual knowledge of the breach"). However, the plaintiff must still have actual knowledge of the facts necessary to constitute a claim and those facts "could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." *Caputo*, 267 F.3d at 193 (quoting *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1177 (3d Cir. 1992)).

Here, Plaintiffs complain Defendants engaged in prohibited transactions by causing the Plan to pay excessive fees to ACIM and ACS. Defendants do not explain how Plaintiffs had actual knowledge of these transactions except that the proprietary funds have existed since the Plan's inception. Without more, Defendants have not shown it is clear from the face of the amended complaint Plaintiffs knew of the alleged prohibited transactions or had actual knowledge of the facts necessary to constitute a claim.

Accordingly, Counts III and IV are not barred by the statute of limitations.

**II. The motion to dismiss for failure to state a claim is denied.**

Next, Defendants seek an order dismissing the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

On a motion to dismiss, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

**A. The amended complaint states a claim for breach of loyalty and prudence.**

Defendants argue the breach of fiduciary duty claim must be dismissed because Plaintiffs do not "adequately allege a deficient process for selecting investments." Def.'s Br. 16 (Doc. 35).

ERISA imposes the duties of loyalty and prudence on fiduciaries. The duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A). The duty of prudence requires fiduciaries to carry out their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing." 29 U.S.C. § 1104(a)(1)(B). The duty "'focuses on the fiduciary's conduct preceding the challenged decision.'" *Braden*, 588 F.3d at 595 (quoting *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir. 1994)). When determining whether a fiduciary has acted prudently, the court must "focus on the process by which it makes its decisions rather than the results of those decisions." *Id.* The key question is whether a "fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Pension Benefit Guar. Corp. ex rel. St. Vincent v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 716 (2d Cir. 2012).

In order to state a claim for breach of fiduciary duty, a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan. *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000). Only the issue of breach is disputed here.

Even when the complaint does not allege facts showing specifically how the fiduciaries breached their duty through improper decision-making, a claim can survive a motion to dismiss if the court may reasonably infer from what was alleged that the fiduciaries followed a flawed process. *Braden*, 588 F.3d at 595-96.

Here, the amended complaint alleges Defendants breached their fiduciary duties by using a disloyal and imprudent process to manage the Plan. Defendants assert Plaintiffs do not allege sufficient facts to create an inference of a disloyal and imprudent process, pointing to Plaintiffs' concession that they do not have knowledge of Defendants' processes. Defendants also attack Plaintiffs' allegations piece by piece on six grounds: (1) the Plan's use of American Century funds is not improper; (2) fiduciaries are not required to select lowest-cost investments; (3) Plaintiffs do not adequately plead the recordkeeping costs were excessive; (4) the delay in moving assets to a lower-cost share class is not a breach; (5) offering a Money Market fund instead of a Stable Value fund is not a breach; and (6) the existence of some underperforming funds is not a breach.

The Court considers each of these arguments below. Reading the allegations in light most favorable to Plaintiffs and viewing the allegations in their totality, the Court finds the allegations state a claim for breach of fiduciary duty.

> **1. Plaintiffs' allegations that fiduciaries limited the Plan's investment lineup to American Century funds in their own self-interest, supports a claim for breach of fiduciary duty.**

Defendants first assert the use of proprietary funds does not create an inference that fiduciaries breached their duties. However, this assertion mischaracterizes the nature of Plaintiffs' allegations. Plaintiffs allege Defendants breached their fiduciary duties because they limited the Plan's investment lineup to American Century investment options to benefit American Century. Am. Compl. ¶ 72.

Defendants also point to the Prohibited Transaction Exemption 77-3 ("PTE 77-3"), which allows plans sponsored by mutual fund advisors to invest in affiliated mutual funds. 29 U.S.C. §§ 1108(b)(5), (8). Defendants also cite to *Dupree v. The Prudential Ins. Co. of Am.*, for the

premise that compliance with § 1108(b) does not create an inference of a breach of fiduciary duty. No. 99-8837-Civ.-JORDAN, 2007 WL 2263892, at *45 (S.D. Fla. Aug. 7, 2007) (after a bench trial finding "nor can a breach of loyalty be presumed from the mere fact that [defendant] needed [the PTE 77-3] exemption[] in order to avoid engaging in prohibited transactions with the Plan").

PTE 77-3 is specific to prohibited transaction claims under 29 U.S.C. § 1106. It does not relieve a fiduciary from its duties of loyalty and prudence to a plan. 29 U.S.C. § 1108(a) ("An exception granted under [§ 1108] shall not relieve a fiduciary from any other applicable provision of this chapter."). Therefore, PTE 77-3 is inapplicable as to the duties under § 1108 subject to this claim. Additionally, compliance with PTE 77-3 is a question of fact that cannot be resolved at this stage in the proceedings. *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 821 (8th Cir. 2008) (holding "[b]ecause relief may be appropriate under a set of facts that could be proved consistent with the allegations . . . [the] motion to dismiss was improvidently granted.") (internal quotation marks and citation omitted).

Next, Defendants argue Plan participants were not limited to American Century investment options because they were able to invest in a Schwab Personal Choice Retirement Account, through which they could invest in "a large universe of stocks, ETFs, and mutual funds, including mutual funds and investments not managed by ACIM." Def.'s Br. 12. However, under ERISA, each investment alternative "offered by a plan must be judged individually." *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007). Therefore, the existence of the Schwab retirement account option is irrelevant to determining whether Defendants used a disloyal and imprudent process to select the other investment options.

Case 4:16-cv-00737-DGK   Document 55   Filed 02/27/17   Page 12 of 21

Finally, Defendants argue American Century makes "generous contributions" to the Plan, approximately $18 million per year, which "vastly exceed[] the alleged 'excess fees.'" Def.'s Br. 12. Defendants claim this fact refutes Plaintiffs' allegations that Defendants acted in their own self-interest, because if American Century wanted to maximize profits it would have eliminated these contributions. Defendants' argument is a factual dispute that cannot be resolved at this stage. *See Aten*, 511 F.3d at 821.

Taking Plaintiffs' allegations as true and viewed in totality with the other allegations, Plaintiffs' allegation that fiduciaries limited the Plan's investment lineup to American Century funds for their own self-interest creates an inference that fiduciaries used an imprudent and disloyal process to manage the Plan.

> **2. Plaintiffs' allegations that fiduciaries did not investigate lower-cost investments support a claim for breach of fiduciary duty.**

Next, Defendants argue the fees charged by the Plan's investments do not raise an inference of a disloyal and imprudent decision-making process, even though lower-cost funds were available. Plaintiffs claim Defendants' decision-making process was deficient because they failed to investigate lower-cost, non-proprietary investment options with comparable performances, and instead, retained higher-cost, proprietary investment options to the detriment of Plan participants. Am. Compl. ¶¶ 73, 77. The amended complaint alleges the funds offered by the Plan charged fees that were excessive as compared with similar investment products. The amended complaint also alleges Defendants stood to benefit from the alleged excessive fees because American Century entities were paid investment management fees by these proprietary funds.

Defendants note fiduciaries are "entitled to substantial deference in selecting investments for a plan," *Tussey v. ABB*, 746 F.3d 327, 335 (8th Cir. 2014), and argue they were not required

to select the lowest cost investments or consider fees "in a vacuum." Def.'s Br. 13. But, *Tussey* is not analogous. In *Tussey*, plan documents gave plan administrators "sole and absolute discretion" over the plan. *Tussey*, 746 F.3d at 333. Therefore, the court applied an "abuse of discretion" standard in reviewing the plan administrator's action. *Id.* But nothing in the record here indicates Defendants had "sole and absolute discretion" over this Plan, making *Tussey's* holding is inapposite.

Defendants next argue "no one fee amount is alone 'reasonable,' and simply allowing a plan to incur greater expenses than some hypothetical average or some alternative fund does not amount to impropriety." Def.'s Br. 14. Defendants cite *Hecker v. Deere & Co.*, for the proposition that "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)." 556 F.3d 575, 586 (7th Cir. 2009). But Plaintiffs are not complaining that Defendants failed to find the lowest cost funds, rather, they allege Defendants acted in their own self-interest by following a process that failed to consider lower-cost funds in favor of higher-cost American Century funds. These specific allegations regarding the excessive fees support an inference that the Plan's fiduciaries' process was deficient.

Finally, Defendants' arguments that the fees are not excessive and the comparisons to Vanguard funds are inappropriate raise factual issues that cannot be resolved in a motion to dismiss. *See Aten*, 511 F.3d at 821.

### 3. Plaintiffs' allegation of excessive recordkeeping costs supports a claim for breach of fiduciary duty.

Next, Defendants argue Plaintiffs' claim that Defendants caused the Plan to incur excessive recordkeeping fees is conclusory and does not support an inference of disloyalty and imprudence. The amended complaint alleges prudent fiduciaries regularly seek bids for

14

recordkeeping services, and that because of pre-existing business relationships with the Plan's recordkeepers (JPMorgan RPS then Schwab Retirement Services), the fiduciaries failed to investigate the Plan's recordkeeping costs and seek alternative providers. Am. Compl. ¶¶ 92, 96, 100.

Defendants raise three arguments in response: (1) Plaintiffs do not allege the amount of the recordkeeping fees the Plan paid; (2) Plaintiffs do not plead how much a recordkeeper should be paid; and (3) Plaintiffs' inferences that the recordkeeper was selected based on improper motives are unsupported. Defendants point to *White v. Chevron Corp.*, which dismissed a claim for excessive recordkeeping fees. No. 16-cv-0793-PJH, 2016 WL 4502808, at *15 (N.D. Cal. Aug. 29, 2016). In *White* not only did the plaintiffs fail to plead the amount of recordkeeping fees paid, they also did not allege facts that the plan fiduciaries failed to consider a competitive bid, which the court found "important." *Id.*

Plaintiffs distinguish *White* by pointing to their allegations alleging the amounts paid to the recordkeeper and reasonable recordkeeping fees. Am. Compl. ¶ 95. Additionally, Plaintiffs claim the relationship between American Century and the recordkeeper together, with the allegations of excessive fees, establishes an inference of disloyalty and imprudence. Importantly, Plaintiffs plead facts that state Defendants failed to seek alternative recordkeeping providers. *Id.* ¶¶ 96, 100. Therefore, Plaintiffs have pled sufficient facts to raise an inference of a deficient decision-making process for recordkeeping services. *See, e.g.*, *Tussey*, 746 F.3d at 336 (holding district court did not err by finding plan fiduciaries breached their duty by failing to investigate and monitor plan recordkeeping costs).

#### 4.  Plaintiffs' other allegations support a claim for breach of fiduciary duty.

Finally, Defendants argue Plaintiffs' remaining allegations do not support an inference of flawed decision-making.  These other allegations are:  (1) delaying the transfer of Plan assets to a lower-cost share class; (2) failing to offer a Stable Value fund; and (3) retaining underperforming funds.

Defendants attack these allegations individually.  But viewed collectively in conjunction with Plaintiffs' allegations that Defendants' decisions were motivated by self-interest and reflected a failure to act as a prudent investor, these allegations sufficiently support a claim for breach of fiduciary duty.

In sum, Plaintiffs have plausibly stated a claim for breach of the duty of loyalty and prudence.  The amended complaint, read as a whole, supports an inference that Defendants' managed the Plan with a flawed decision-making process.  Additionally, the amended complaint supports an inference Defendants did not employ the appropriate methods to investigate the merits of the funds within the Plan's investment lineup, thereby failing to act as a prudent investor.  Further, Plaintiffs have plausibly pled Defendants did not act solely in the interest of Plan participants and for the exclusive purpose of providing benefits to Plan participants.  Accordingly, the motion to dismiss Count I for failure to state a claim is DENIED.

### B.  The amended complaint states a claim for failure to monitor.

Defendants argue Count II, failure to monitor fiduciaries, is wholly derivative of Count I, and therefore, should also be dismissed for failure to state a claim.  Because Plaintiffs have sufficiently stated a claim under Count I, Defendants' motion to dismiss Count II is DENIED.

**C. The amended complaint states a claim for prohibited transactions.**

Defendants argue Plaintiffs fail to state a claim for prohibited transactions because statutory exemptions allow these transactions. This argument is unavailing because it is not clear from the face of the amended complaint any exemption applies.

Section 1106 "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Trust & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241-42 (2000) (quoting *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993)). These "prohibited transactions" are subject to several statutory exemptions. A defendant bears the burden of showing that an exemption to § 1106 applies because the exemptions are treated as an affirmative defense. *See Braden*, 588 F.3d at 601 ("[T]he statutory exemptions under § 1108 are defenses which must be proven by the defendant."). Therefore, it must be clear from the face of the complaint that the Plan's use of proprietary funds falls within an available exemption.

Defendants first argue Plaintiffs' claims are foreclosed by 29 U.S.C. § 1108(b)(8). Under § 1108(b)(8), the restrictions in § 1106 do not apply to "[a]ny transaction between a plan and . . . a common or collective trust fund or pooled investment fund maintained by a party in interest which is a bank or trust company supervised by a State or Federal agency" if the following conditions are met:

> (A) the transaction is a sale or purchase of an interest in the fund,
>
> (B) the bank, trust company, or insurance company receives not more than reasonable compensation, and
>
> (C) such transaction is expressly permitted by the instrument under which the plan is maintained, or by a fiduciary (other than the bank, trust company, or insurance company or an affiliate thereof) who has authority to manage and control the assets of the plan.

17

29 U.S.C. § 1108(b)(8).

Defendants have not shown these requirements are met. For instance, the exemption applies only to a "sale or purchase of an interest in the fund," but the alleged prohibited transactions are the payment of monthly fees from Plan assets. Also, Plaintiffs pled American Century and its affiliates received more than reasonable compensation in these transactions. Therefore, from the face of the amended complaint, § 1108(b)(8) does not bar Plaintiffs' claims.

Defendants also argue the transactions are exempt under PTE 77-3. PTE 77-3 provides, in pertinent part, that "'the restrictions of [29 U.S.C. § 1106] shall not apply to the acquisition or sale of shares of' [a mutual fund] 'by an employee benefit plan covering only employees of such investment company.'" *Leber v. Citigroup, Inc.*, No. 07 Civ. 9329, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010) (quoting PTE 77-3). This exemption applies only if certain requirements are met, including, "the plan must pay no 'investment management, investment advisory or similar fee' to the mutual fund, although the mutual fund itself may pay such fees to its managers." *Id.* (quoting PTE 77-3(a)). Further, "[a]ll other dealings between the plan and the investment company" must be "on a basis no less favorable to the plan than such dealings are with other shareholders of the investment company." PTE 77-3(d).

Defendants have not shown from the face of the amended complaint that the dealings between the proprietary mutual funds and the Plan were not "less favorable" to the Plan than dealings with other shareholders of those mutual funds. Rather, the amended complaint alleges American Century introduced a lower-cost share class for several of its funds and that share class was available to other employer-sponsored plans, but Defendants failed to timely convert Plan assets to this lower-cost share class. Am. Compl. ¶¶ 81-82. Additionally, Plaintiffs allege Defendants directed the Plan trustee to delay conversion to the lower-cost share class in order to

collect additional fees, which caused a loss to Plan participants. *Id.* ¶ 83. *See Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-02781 (SRN/JSM), 2012 WL 5873825, at *17 (D. Minn. Nov. 20, 2012) (denying Rule 12(b)(6) motion based on PTE 77-3, where the plaintiffs claimed the defendants failed to make available "the lowest-cost share class of [certain] funds" that were available to "similarly situated institutional shareholders, who could have invested in lower cost shares"). Accordingly, Defendants have failed to show an exemption precludes the prohibited transaction claims.

The motion to dismiss Counts III and IV for failure to state a claim is DENIED.

**D. The amended complaint states a claim for equitable relief.**

Defendants seek dismissal of Count V, which requests equitable relief under 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) permits plan participants to bring a civil action "to obtain other appropriate equitable relief" to redress "any act or practice which violates" ERISA. 29 U.S.C. § 1132(a)(3). The amended complaint alleges American Century, ACIM, and ACS "should be required to disgorge all monies they have received during the relevant class period as a result of the Plan's investments in American Century-affiliated mutual funds." Am. Compl. ¶ 162.

Under § 1132(a)(3), "equitable relief . . . refer[s] to those categories of relief that were typically available in equity." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (internal quotation marks and citation omitted). "[A] plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. One "limited exception" to the requirement that money be clearly traceable occurs when a party seeks an "accounting for profits." *Id.* at 214 n.2. "An accounting is imposed when the property subject to the constructive

trust produces profits while in the defendant's possession. The defendant is forced to disgorge those profits, although it is not necessary for the plaintiff to identify any particular *res* or fund of money holding the profits." *Parke v. First Reliance Std. Life Ins. Co.*, 368 F.3d 999, 1008 (8th Cir. 2004). To state a claim for equitable relief, plaintiffs must plead the defendants "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris*, 530 U.S. at 251.

Defendants argue Plaintiffs are not entitled to relief because the fees cannot be traced to a particular fund or property within Defendants' possession, Plaintiffs have not established the fees paid were excessive, and Plaintiffs have not plead that Defendants had knowledge the fees were excessive. Finally, Defendants argue fees paid by mutual funds are not governed by ERISA, citing *IATSE Local 33 Section 401(k) Plan Bd. of Trs. v. Bullock*, No. 08-3949 AHM (SSx), 2008 WL 4838490, at *6 (C.D. Cal. Nov. 5, 2008).

The Court holds the amended complaint states a claim under 29 U.S.C. § 1132(a)(3). The amended complaint alleges the payments in question "are traceable to specific transactions that have been taken on specific dates." Am. Compl. ¶ 161. It also alleges American Century, ACIM, and ACS had actual or constructive knowledge of the circumstances rendering the transactions unlawful through, among other things, employees and Committee Members holding positions simultaneously at several American Century entities and the interconnected relationship between the entities themselves. *Id.* ¶ 162. This is sufficient to allege that Defendants had actual or constructive knowledge of the circumstances that rendered the transaction unlawful.

Finally, the holding of *IATSE* is irrelevant to this case. *IATSE* concerned whether a mutual fund manager was a party in interest under ERISA and did not address whether a plaintiff could recover equitable relief under 28 U.S.C. § 1132(a)(3).

The Court finds the amended complaint states a claim for equitable relief.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss (Doc. 34) is DENIED.

**IT IS SO ORDERED.**

Date:   February 27, 2017            /s/ Greg Kays

GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT