IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| STEVE WILDMAN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:16-CV-00737-DGK |
| | ) |
| AMERICAN CENTURY SERVICES, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF STEVE POMERANTZ**

This case concerns allegations Defendants violated various provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiffs are former employees of Defendants' and participated in the company's 401(k) retirement plan. Plaintiffs allege Defendants, in their roles as employer, plan sponsor, plan fiduciary, and investment manager of the funds in the plan, breached their duties of loyalty and prudence and caused the retirement plan to pay excessive fees.

Now before the Court is Defendants' motion to exclude the expert report and testimony of Steve Pomerantz (Doc. 137),[1] Plaintiffs' expert witness for damages. For the reasons below, the motion is DENIED.

**Background**

According to the First Amended Complaint (Doc. 28), Plaintiffs assert claims against Defendants, the fiduciaries of the American Century Retirement Plan (the "Plan"), for breach of fiduciary duty and engaging in prohibited transactions under ERISA. Pertinent to this motion,

---

[1] Defendants' request for oral argument is denied because the Court has determined oral argument would not be helpful in resolving this issue. This motion has been decided on the parties' written memoranda.

from the beginning of the class period until September 2016, Defendants maintained a menu of investment options for the Plan that consisted exclusively of proprietary American Century funds. Plaintiffs allege these proprietary funds underperformed relative to their marketplace competitors and charged higher than average investment management fees.  In 2010, a consultant, Hewitt EnnisKnupp ("Hewitt") provided Defendants an analysis of the Plan identifying features of the Plan that were inconsistent with other comparable plans, including the high number of investment options, the exclusive use of proprietary funds, high investment management fees, high administrative expenses, the lack of a stable value fund, and the limited use of index funds.  Despite the Hewitt report's findings and recommendations, Defendants' only action was to reduce the number of investment options by a net of four.  Defendants retained an all-proprietary-funds lineup and did not add non-proprietary funds until after this case was filed.

Dr. Pomerantz's is a mathematician whose qualifications include 30 years' experience in the investment field including working as a portfolio manager and providing investment management services to mutual funds as both an investment advisor to a fund and as a sub-advisor. He has testified in the numerous 401(k) cases in federal court on the topic of prudent investment processes.

Dr. Pomerantz proposed testimony covers two topics.  First, he opines on the Committee's management of the Plan's core lineup including the Plan's exclusive use of proprietary funds, the number of investment options in the Plan, the number of overlapping funds, and the failure to procure revenue sharing rebates.  Second, he presents four damages models illustrating how alternative plan lineups would have performed relative to the Plan's actual performance.  Model 1 approximates how the Plan would have performed had it earned a market rate of return while preserving the asset allocation decisions of the Plan's participants.  Model 2 reduces the number

of investment options and is modeled on the federal government's Thrift Savings Plan. Model 3 replaces every investment in the Plan with the most popular mutual fund among fiduciaries managing plans comparable to the Plan, in the same Morningstar category. Model 4, also called the "Hewitt Model," streamlines the investment menu and adds two index funds and a stable value fund, while retaining a significant number of American Century-affiliated funds. In addition, Dr. Pomerantz calculated other miscellaneous components of the Plan's damages, including losses associated with the failure of the Plan's fiduciaries to procure revenue sharing rebates from American Century.

**Standard**

An expert witness may testify if he satisfies four general requirements. First, he must be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Second, his expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Third, the expert's testimony must reflect reliable and scientifically valid reasoning and methodology. Fed. R. Evid. 702(c); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–94 (1993). Fourth, the expert must have "reliably applied the principles and methods" to "sufficient facts or data." Fed. R. Evid. 702(b), (d).

The party seeking admission of expert testimony has the burden of establishing admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). A court should exclude expert testimony "only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Johnson v. Mead Johnson & Co.*, 754 F.3d 557, 562 (8th Cir. 2014).

**Discussion**

Defendants seek to exclude the testimony and expert report of Dr. Pomerantz, a mathematician hired by Plaintiffs. Dr. Pomerantz's goal was to quantify Plaintiffs' damages by offering different permutations of a hypothetical plan lineup correcting for the various allegedly imprudent aspects of the Plan. Defendants object to the admission of this evidence on three bases: (1) Dr. Pomerantz is not qualified to give opinions he propounds; (2) Dr. Pomerantz's calculations of damages do not match up with his theories of breach; and (3) each of the damages models is based on an unreliable methodology and is unsupported by the record.

**I.  Dr. Pomerantz is qualified to testify about prudent investment processes.**

First, Defendants argue Dr. Pomerantz is not qualified to give opinions on the processes that an investment fiduciary must establish, and that the Plan's fiduciaries were imprudent in selecting investment options, monitoring investment options, and monitoring costs.

This case is currently set for a bench trial commencing on August 27, 2018. As discussed previously, the policy behind allowing district judges to serve as a gatekeeper of expert testimony under *Daubert* is the protection of juries. *See, e.g., Attorney General of Oklahoma v. Tyson Foods, Inc.,* 565 F.3d 769, 779 (10th Cir. 2009) (noting that *Daubert* applies to nonjury trials but "the usual concerns regarding unreliable expert testimony reaching a jury obviously do not arise when a district court is conducting a bench trial"). The risk of confusing or misleading a jury is not an issue. Having reviewed the record, the Court is satisfied, initially, that Dr. Pomerantz is qualified to testify regarding fiduciary matters including selecting and monitoring investment options. Although Defendants complain that Dr. Pomerantz has never served as a fiduciary of a 401(k) plan, the Court believes that based on his education and experience, he is qualified to testify as an expert about quantifying damages.

## II. Dr. Pomerantz's models are aligned to the theories of breach and any dispute as to the factual basis of his opinions goes to the weight of his testimony.

The remainder of Defendants' arguments relate to the reliability of Dr. Pomerantz's damages models. Defendants first argue the damages models do not align with the theories of breach causing a disconnect between the injury and the alleged wrongful conduct. Then Defendants argue the models are based on unreliable methodologies and ignore facts in the record.

As to Defendants' argument that the models do not track the theory of breach, Plaintiffs respond that each model is designed to correct certain aspects of the Plan's alleged imprudent features to assist the Court in determining damages. For example, if the Court finds the Plan was imprudently managed because it consisted of high-cost, low-performing proprietary funds and too many investment options, then the Court can reference Model 2. Alternatively, if the Court finds only that the Plan was imprudently managed because of the proprietary funds and not the number of options, then the Court can reference either Models 1 or 3. Finally, if the Court concludes Defendants did not implement the recommendations in the Hewitt report and that decision was imprudent, then the Court can reference Model 4. The Court finds, at this juncture, the damages models sufficiently link to the various theories of breach of fiduciary duty.

Lastly, any disagreement as to the factual basis underlying Dr. Pomerantz's opinions goes to the weight and not the admissibility of his testimony. *See Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002) (stating "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the [fact finder] must such testimony be excluded.") (quotations omitted).

## Conclusion

Defendants' motion to exclude the expert report and testimony of Dr. Pomerantz (Doc. 137) is denied.

**IT IS SO ORDERED.**

Date: May 22, 2018

/s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT